J-A08008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SCOTT A. D'HAPPART AND CHRISTINA M. D'HAPPART | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 580 WDA 2021 |
| FIRST COMMONWEALTH BANK | : | |

Appeal from the Order Entered May 4, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 20-010758

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  July 8, 2022**

Appellants, Scott A. d'Happart and Christina M. d'Happart, appeal from the trial court's May 4, 2021 order sustaining Appellee's, First Commonwealth Bank ("FCB"), preliminary objections and dismissing Appellants' complaint with prejudice.  We affirm.

The trial court summarized the background of this matter as follows:

<u>PROCEDURAL HISTORY</u>

[Appellants] filed a class action complaint on behalf of themselves and other persons similarly situated on October 13, 2020[,] against [FCB], in the Allegheny County Court of Common Pleas Civil Division.  In their complaint, [Appellants] allege five separate counts: Count I: statutory damages under 13 Pa.C.S.[] § 9625(c)(2) on behalf of the pre-sale notice subclass for violation of 13 Pa.C.S.[] §§ 9610, 9614[,] and 12 Pa.C.S.[] § 6256(c); Count II: statutory damages under 13 Pa.C.S.[] § 9625(c)(2) on behalf of the improper expenses subclass for violation of 13 Pa.C.S.[] §§ 9610, 9614[,] and 12 Pa.C.S.[] § 6256(c); Count III: statutory damages under 13 Pa.C.S.[] § 9625(e)(5) on behalf of the disposition notice subclass for violation of 13 Pa.CS.[] §§

9610 and 9616[,] and 12 Pa.C.S.[] § 6261(d); Count IV: statutory damages for breach of contract on behalf of the pre-sale notice subclass pursuant to 13 Pa.C.S.[] §§ 9610 and 9625; Count V: statutory damages for conversion on behalf of the pre-sale notice subclass pursuant to 13 Pa.C.S.[] §§ 9610 and 9625. By order of court dated November 19, 2020, this case was assigned to the Commerce and Complex Litigation Center, to be overseen by this court.

In response to the complaint, [FCB] filed preliminary objections on December 16, 2020[,] as well as a brief in support of preliminary objections. [Appellants] filed an answer to [FCB's] preliminary objections on February 5, 2021. [FCB] filed a reply brief on February 26, 2021. On March 11, 2021, this court heard the parties' arguments on [FCB's] preliminary objections. On May 4, 2021, this court issued an order sustaining [FCB's] preliminary objections and dismissing [Appellants'] complaint with prejudice.

On May 5, 2021, [Appellants] filed a notice of appeal…, appealing this [c]ourt's May 4, 2021 order sustaining [FCB's] preliminary objections to the Superior Court of Pennsylvania. On May 6, 2021, this court ordered [Appellants] to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). [Appellants] filed their concise statement of errors complained of on appeal on May 26, 2021.

***

FACTUAL HISTORY

[Appellants] are natural persons and a married couple…. [Complaint ("Compl."), 10/13/20,] at 3…. [FCB] is a local banking association that is licensed to do business in the Commonwealth of Pennsylvania. *Id.* at 1. [FCB] is headquartered in Pennsylvania…. *Id.*

When considering preliminary objections in the nature of demurrer, a court must accept as true all well[-]pleaded material facts in the complaint, as well as inferences reasonabl[y] deductible therefrom. After reading [Appellants'] complaint, as well as all relevant subsequent materials, it is clear that no material facts are disputed. Admittedly, [FCB] provides additional facts in their preliminary objections that [Appellants] did not recite in their complaint.[1] [N.T., 3/11/21, at 33-35. Appellants] ha[ve] not given this court any indication that they dispute these additional facts. The court accepts as true all well[-]pleaded

material facts in the complaint, as well as the additional facts [FCB] provided, because [Appellants] do not dispute that these facts occurred.

> [1] While [Appellants'] counsel argued the bankruptcy petition, circumstances regarding surrender of the [at-issue] vehicle, description of sale and sale process, and several other facts were outside the record, [Appellants] did not dispute any of these facts in argument or in any of [Appellants'] filings. Further, some of these facts the [c]ourt may take judicial notice of, such as the bankruptcy filing by [Appellants] to be discussed further in this opinion. The court can take judicial notice of the bankruptcy petition because it is a matter of public record.

[FCB's] preliminary objections provide a concise statement of the facts that the court wishes to recite below.

On October 15, 2015, [Appellants] financed the purchase of a 2013 Ford Taurus (the "vehicle") from South Park Mitsubishi in Bethel Park, Pennsylvania. They financed the purchase of the vehicle by entering into a Retail Installment Sales Contract ("RISC"). [FCB's Brief in Support of] Prelim[inary] Objections[ (hereinafter "FCB's BSPO"), 12/16/20,] at 3…. Immediately thereafter, [FCB] purchased the RISC for value and became the creditor and secured party under the RISC. ***Id.***

[Appellants] purchased the vehicle primarily for consumer use, and the RISC is a "consumer credit contract." Compl. … at 3.

The RISC sets forth certain rights and conditions between [FCB] and [Appellants] relating to the vehicle's purchase and financing. [FCB's BSPO] at 3. For example, [Appellants] agreed to make 72 monthly payments of $370.49, secured by the vehicle as collateral. ***Id.*** The RISC also explained the creditor's right to repossess the collateral if [Appellants] failed to make the required monthly payments: "If you do not meet your contractual obligations, you may lose the vehicle." ***Id.***

The RISC specifically describes certain conditions that constitute a "default," including in relevant part, if either "[y]ou do not pay any payment on time" or "[y]ou start a proceeding in bankruptcy." ***Id.*** at 4.

In Section 3, the RISC detailed additional charges and fees that may be incurred if the borrowers/buyers defaulted, under the

heading, "IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES," including but not limited to, the following separate sub-headings: "You may owe late charges"; "You may have to pay collection costs," only if [FCB] has to go to court to recover the vehicle, and that in such circumstances, "You will pay reasonable attorney's fees and court costs as the law permits." *Id.*

The RISC also described [Appellants'] right to redeem the vehicle after any repossession, under the heading "How you can get the vehicle back if we take it." *Id.* As to potential redemption, the RISC provided: "If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem." *Id.*

The RISC also explained [FCB's] right to sell the vehicle, if [Appellants] failed to redeem. *Id.* at 5. Under the heading "We will sell your vehicle if you do not get it back," the RISC confirmed that [FCB] "will send you a written notice of sale before selling the vehicle." *Id.*

The RISC also described the expenses [FCB] was permitted to recover from the sale price, including expenses incurred "as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows." *Id.*

On November 13, 2017, [Appellants] filed a petition for Chapter 7 bankruptcy, which included the vehicle and related amounts still due and owing under the RISC. *Id.* at 4.[1] The court can take judicial notice of the bankruptcy petition because it is a matter of

---

[1] Appellants' bankruptcy petition stated that Appellants would retain the vehicle and keep payments current. FCB's Preliminary Objections, 12/16/20, at Exhibit A ("Bankruptcy Petition") at Official Form 108 at 1. In their petition, Appellants listed the current value of the vehicle as $9,996.00, the amount they still owed for the vehicle to FCB under the RISC as $16,444.00, and the total amount they had paid to FCB pursuant to the RISC as $1,113.00. *Id.* at Official Form 106D at Schedule D at 1 and Official Form 107 at 3. *See also* FCB's Brief at 18-19 (observing that Appellants "expressly confirmed, under oath, that the [v]ehicle was worth significantly less than the amount they owed on the RISC. They relied on this fact in their [b]ankruptcy [p]etition, which they filed months prior to [FCB's] sale of the [v]ehicle, to support their request for discharge of the debt, which was successful") (citation omitted).

public record. This was argued by defense counsel and was not disputed by [Appellants]. [N.T.] at 7….

After the bankruptcy petition, [Appellants] continued to pay the monthly loan amount for a brief time period before they *surrendered* the vehicle to [FCB] when they no longer made the monthly payments. [FCB's BSPO] at 5. [Appellants'] complaint (as well as subsequent documents) do[] not dispute that [Appellants] failed to make the required monthly payments and *surrendered* the vehicle to [FCB]. *Id.* On March 7, 2018, [Appellants] obtained a discharge order pursuant to Chapter 7 of the Bankruptcy Code. *Id.* After the vehicle was *surrendered* by [Appellants] and repossessed by [FCB], [FCB] sold the [v]ehicle.[3] *Id.* [FCB] avers that because of the discharge order, [FCB] did not send any post-sale deficiency notice because it could not seek to collect any deficiency based upon the prior discharge order. *Id.*

> [3] While [Appellants] *surrendered* the [v]ehicle, it is clear by the briefs and argument of counsel, the process is deemed a repossession of the vehicle.

Upon repossession, the vehicle was transported to an auto auction in Altoona, [Pennsylvania]. *Id.* at 6. Logic dictates, as an appropriate inference by this court, since [Appellants] surrendered the vehicle, they had the opportunity to remove their personal items. [Appellants'] complaint does not allege they needed to travel to Altoona to retrieve any personal possessions left in the vehicle. *Id.* This was not disputed by [Appellants'] counsel in oral argument. [N.T.] at … 8….

On October 15, 2018, [FCB] sent a Notice of Repossession and Plan to Sell Vehicle ("Notice of Repossession") to both [Appellants], as co-borrowers. [FCB's BSPO] at 5. The Notice of Repossession stated, in relevant part, that the vehicle was seized "because you broke promises in our agreement. The vehicle is being stored at Altoona Auto Auction at the address below. We will sell this vehicle at public sale." *Id.*

The Notice of Repossession also stated the specific "location" where the sale will be held, including the name and address of the auto auction. *Id.* It further specifically stated that the vehicle will be sold at a "public sale," which "will be conducted using a sealed bid auction with bids accepted during the dates specified above." *Id.*

The "Notice of Repossession and Plan to Sell Vehicle" states that the date of the sale of the vehicle was: "Monday, NOVEMBER 5TH 2018 until Friday, NOVEMBER 9TH 2018[,"] from "9:00 A.M. to 5:00 P.M. local time." Compl[.] at Exhibit 2.

The Notice of Repossession provided an itemized statement of the amounts required to redeem the vehicle. The Notice of Repossession also informed [Appellants] that "[t]o learn the exact amount you must pay [to redeem], call us at 800-221-8605. If you want us to explain to you in writing how we have figured the amount you owe us, you may call us at 800-221-8605 or write us at [FCB], Consumer Special Assets Department, 654 Philadelphia Street, Indiana, Pennsylvania 15701, and request a written explanation." [FCB's BSPO] at 6.

In addition to stating the "Total Amount Due" on the Notice of Repossession, the bottom of the Notice stated the following: "In addition to paying us the Total Amount Due, you must also pay storage fees of $25 per day and other costs charged by Altoona Auto Auction. These charges must be paid to Altoona Auto Auction at the time when you redeem your vehicle." Compl[.] at Exhibit 2. [FCB] also provided the address of Altoona Auto Auction in this Notice: "Location: Altoona Auto Auction, 1710 Margaret Avenue, Altoona, Pennsylvania, 16603." *Id.*

The Notice of Repossession informed [Appellants] that they "have the right to reclaim personal property in the vehicle within thirty (30) days after the date of the letter," and provided a phone number for retrieval of personal property. *Id.* [Appellants] do not allege that any personal property was left in the vehicle, that they called to inquire about any personal property, or that they attempted to arrange retrieval of any personal property. [FCB's BSPO] at 7. Reiterating, since [Appellants] *surrendered* the vehicle, they had full opportunity to remove any personal items.

The Notice of Repossession did not contain guidance on [Appellants'] rights of reinstatement. Compl[.] at Exhibit 2. Section 3(e) of the RISC provides that: "if we repossess the vehicle, we may, *at our option*, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate)." … *Id.* at Exhibit 1 [(emphasis added in trial court opinion)].

[FCB] sold the [v]ehicle, which resulted in a deficiency. [N.T.] at … 8…. [FCB] did not attempt to collect the deficiency because of [Appellants'] bankruptcy filing. *Id.* [FCB] did not provide a post-

sale disposition notice. Compl[.] at 10. [Appellants] did not pay any repossession costs, transportation expenses, storage fees, or any other fees[,] and there is no dispute as to these facts. [N.T.] at … 9….

Trial Court Opinion ("TCO"), 8/24/21, at 1-9 (unnecessary capitalization, footnote, some internal citations, and parentheses around citations omitted; emphasis in original; single quote marks changed to double quotation marks).

On appeal, Appellants raise the following questions for our review:

1. Whether the [t]rial [c]ourt erred by considering [FCB's] unverified factual allegations for which there is no support in the record.

2. Whether the [t]rial [c]ourt erred by ruling that [FCB] used a form notice that entitled it to a statutory "safe harbor" defense.

3. Whether the [t]rial [c]ourt erred by ruling that [FCB] had not been required to issue a post-sale, deficiency notice to [Appellants].

4. Whether the [t]rial [c]ourt erred by ruling that [Appellants] could have no remedy through the Uniform Commercial Code[ ("UCC"), 13 Pa.C.S. § 1101 *et seq*.,] for [FCB's] violations of the Motor Vehicle Sales Finance Act [("MVSFA"), 12 Pa.C.S. § 6201 *et seq*].

5. Whether the [t]rial [c]ourt erred by ruling that [Appellants] had failed to state claims for statutory damages under the [UCC] based upon [FCB's] breach of contract and its unlawful conversion of certain of [Appellants'] rights in property.

6. Whether the [t]rial [c]ourt erred by ruling that the gist of the action doctrine precluded [Appellants'] claim for statutory damages under the [UCC] based upon [FCB's] unlawful conversion of certain of [Appellants'] rights in property.

7. Whether the [t]rial [c]ourt erred by dismissing the [c]omplaint with prejudice, without first permitting [Appellants] an opportunity to amend the [c]omplaint.

Appellants' Brief at 3-4.

At the outset of our review, we acknowledge that:

We review appeals from orders sustaining preliminary objections in the nature of a demurrer under the following standard:

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

***412 North Front Street Associates, LP v. Spector Gadon & Rosen, P.C.***, 151 A.3d 646, 656 (Pa. Super. 2016) (citation omitted).

## Issue 1

In Appellants' first issue, they argue that the trial court erred in "rel[ying] upon [FCB's] unverified allegations of facts outside of the record." Appellants' Brief at 12. Appellants claim that, "[i]n so doing, the court below

- 8 -

ran afoul of the well[-]rooted principle that, for preliminary objections in the nature of a demurrer, courts must constrain the scope of review to the pleadings." *Id.* at 12-13.

Before delving into the merits of Appellants' first issue, we must consider whether Appellants have preserved it for our review. FCB claims that Appellants have waived this issue by failing to assert below that the trial court could not take judicial notice of their bankruptcy petition. *See* FCB's Brief at 16-17. While our review of the record indicates that Appellants did not specifically argue that the trial court could not take judicial notice of the bankruptcy petition, they did advance that it was improper for the trial court to consider any facts introduced by FCB that were not included in their complaint, including the bankruptcy petition and the facts contained therein. *See* Appellants' Brief in Opposition to FCB's Preliminary Objections, 2/5/21, at 2 (arguing that FCB's preliminary objections include facts outside of the record and that preliminary objections in the nature of a demurrer "require the court to resolve the issues solely on the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer") (citation omitted); *see also* N.T. at 34 (arguing that FCB has "attempted to interject some facts that are outside of the record; most namely the bankruptcy petition, the filing, any circumstances regarding the surrender of the vehicle, any description of the sale and the sale process and several other facts that are not contained in the complaint").

Thus, we conclude that Appellants sufficiently raised this issue below and reject FCB's waiver argument.[2]

Having not found waiver, we turn to the merits of Appellants' first issue. Here, the trial court justified its consideration of the additional facts provided by FCB in their preliminary objections, which Appellants had not alleged in their complaint, on two grounds. First, relying on **Schaffer v. Batyko**, 323 A.2d 62 (Pa. Super. 1974), the trial court explained that "[n]ormally a defendant is not permitted in their preliminary objections, briefs, and argument to raise facts not plead [*sic*] by the [p]laintiff['s c]omplaint. However, if the [d]efendant proffers facts which are *undisputed by the [p]laintiff*, the [c]ourt may consider the undisputed facts." TCO at 9

_____

[2] Further, even if Appellants had not raised this claim below, it would still not be waived. This Court has explained that,

> [a]lthough under Pennsylvania Rule of Appellate Procedure 302(a) issues not raised below are waived, our Supreme Court has held that there is no requirement in the Rules of Civil Procedure that the non-moving party respond to a preliminary objection, nor must that party defend claims asserted in the complaint. Failure to respond does not sustain the moving party's objections by default, nor does it waive or abandon the claim. **Instead, as long as a plaintiff asserts in a complaint a cause of action, the plaintiff may assert any legal basis on appeal why sustaining preliminary objections in the nature of a demurrer was improper.**

**See Vacula v. Chapman**, 230 A.3d 431, 436 n.3 (Pa. Super. 2020) (quoting **Dixon v. Northwestern Mutual**, 146 A.3d 780, 783-84 (Pa. Super. 2016)) (emphasis in original).

(emphasis in original). We disagree with the trial court's reading of **Schaffer** and deem the trial court's reliance on it inappropriate.

In **Schaffer**, the defendant filed preliminary objections challenging the court's jurisdiction over him for want of service of either a writ of summons or complaint in trespass and for the running of the statute of limitations against the plaintiff's claim. **Schaffer**, 323 A.2d at 62-63. The plaintiff filed an answer, explaining that the defendant — who was his brother-in-law — had agreed to waive sheriff's service of the complaint and agreed to pick up the complaint at the plaintiff's attorney's office. **Id.** at 63. The plaintiff also filed an affidavit of acceptance of service taken under oath by the defendant, which stated that he had waived formal service. **Id.** Notwithstanding these filings, the trial court subsequently sustained the defendant's preliminary objections and dismissed the case. **Id.** In doing so, the trial court ignored the plaintiff's answer and the defendant's affidavit. **Id.**

After the plaintiff appealed, we noted that "[w]here an inquiry into essential facts appear necessary, a party should not be deprived of the opportunity of presenting the disputed facts to a fact finder." **Id.** at 63-64. We also pointed out that, under Pennsylvania Rule of Civil Procedure 1028(c), "[i]f an issue of fact is raised, the court shall take evidence by deposition or otherwise." **Id.** at 64 (citing Pa.R.Civ.P. 1028(c)). Consequently, we determined that the trial court erred in sustaining the preliminary objections without giving any consideration to the plaintiff's answer and the defendant's affidavit, and we remanded for the trial court to conduct a hearing on the

- 11 -

factual issue of whether an excuse or estoppel principle existed against the failure of service, or whether effective service had been made. *Id.* at 64-65.

While the trial court relies on *Schaffer* to support the proposition that it may consider additional facts proffered by defendants where such facts are undisputed by plaintiffs, we disagree with the trial court's application of *Schaffer* to the matter at hand. As Appellants observe, *Schaffer* did not deal with preliminary objections in the nature of a demurrer, but instead with preliminary objections relating to improper service. *See* Appellants' Brief at 14. In cases where improper service is raised, that issue cannot be determined from the facts of record. *See Note* to Pa.R.Civ.P. 1028(c)(2); *see also Trexler v. McDonald's Corp.*, 118 A.3d 408, 411 n.3 (Pa. Super. 2015) ("[A] dispute over proper service cannot be resolved by reference to facts pled in the complaint. Additional evidence is required."); *cf. Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002) ("In some contexts, when issues of fact are raised by preliminary objections, the trial court may receive evidence by depositions or otherwise. However, preliminary objections *in the nature of a demurrer* require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer.") (citations omitted; emphasis in original). Thus, *Schaffer* does not support the trial court's claim that, when ruling on preliminary objections in the nature of a demurrer, it may consider a defendant's proffered facts as long as they are undisputed by the plaintiff.

Besides **Schaffer**, the second basis the trial court provided for accepting some of FCB's additional facts was judicial notice. In particular, the trial court stated that it could take judicial notice of Appellants' bankruptcy filing "because it is a matter of public record." TCO at 4 n.1. To support its taking judicial notice of Appellants' bankruptcy petition and the bankruptcy court's subsequent discharge order, the trial court cited to, *inter alia*, **Bykowski v. Chesed, Co.**, 625 A.2d 1256 (Pa. Super. 1993). In that case, the plaintiffs sued several defendants after sustaining injuries as a result of a slip-and-fall. **Id.** at 1257. The plaintiffs claimed that Valley Park Apartments, one of the defendants in the action, owned the improvements on the property where the slip-and-fall occurred, which Valley Park Apartments denied. **Id.** Moreover, another defendant — the Boardwalk Group Limited — admitted in its pleadings that it owned the improvements in question. **Id.** On that basis, Valley Park Apartments filed a motion for judgment on the pleadings, which the trial court subsequently granted. **Id.** at 1257-58. The plaintiffs then appealed.

On appeal, the plaintiffs argued that the trial court erred "in making a factual determination that … Valley Park [Apartments] were not the owners of the improvements since, in considering a motion for judgment on the pleadings, a trial court must accept the non-moving party's pleadings as true and not consider the existence of facts not apparent on the face of the motion." **Id.** at 1258. We rejected this argument, observing that "[i]t is apparent from the record that [the plaintiffs'] assertion that [Valley Park Apartments] were the owners of the property in question is false." **Id.** We

also disagreed with the plaintiffs' argument that the trial court was not allowed to consider information contained in the Lehigh County Recorders of Deeds Office when deciding a motion for judgment on the pleadings. *Id.* at 1258 n.1. We explained that, "[s]ince this motion is the equivalent to a demurrer, in considering it, the court should be guided by the same principles applicable to disposing of a preliminary objection in the nature of a demurrer. As such, the court has the right to take judicial notice of public documents." *Id.* (citations omitted). Accordingly, we affirmed the trial court's order granting judgment on the pleadings in favor of Valley Park Apartments.

Appellants attempt to distinguish *Bykowski*, arguing that "it involved appellate review of a decision awarding judgment on the pleadings — and the public record at issue directly disproved the [plaintiffs'] would-be allegation…." Appellants' Reply Brief at 9.[3] Further, Appellants direct our attention to *220 P'ship v. Philadelphia Elec. Co.*, 650 A.2d 1094 (Pa. Super. 1994), where they say this Court determined that it was error for the trial court to dismiss

---

[3] We are unpersuaded by Appellants' attempt to distinguish *Bykowski*. First, while *Bykowski* did involve a motion for judgment on the pleadings, this Court specifically stated that it "should be guided by the same principles applicable to disposing of a preliminary objection in the nature of a demurrer[,]" and consequently, that it "has the right to take judicial notice of public documents." *Bykowski*, 625 A.2d at 1258 n.1 (citation omitted). Second, we do not agree with Appellants that the judicially-noticed document must directly disprove an allegation in the complaint. As discussed further *infra*, it is proper for courts to take judicial notice of facts where such facts are not in dispute. *See* pages 14-19, *infra*.

the plaintiff's complaint on preliminary objections based on facts found in a separate bankruptcy case. Appellants' Brief at 17. In **220 P'ship**,

> [t]he 220 Partnership (the partnership) filed a civil action by complaint in which it alleged that Philadelphia Electric Company (PECO) and its agent, Gregory Golazeski, Esquire, had interfered maliciously with certain rental contracts with tenants of the partnership. To the plaintiff's complaint[,] the defendants filed preliminary objections in the nature of a demurrer. The defendants alleged therein that in separate proceedings, held in bankruptcy court, it had been determined factually that the partnership's interest in the rental property had been divested by judicial sale prior to the alleged acts of interference. The trial court, believing it could take judicial notice of the findings of a federal bankruptcy court, sustained the preliminary objections and dismissed the complaint. The partnership appealed.

**220 P'ship**, 650 A.2d at 1095.

On appeal, we considered whether the trial court erred in taking judicial notice of the bankruptcy court's findings. We explained:

> Judicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary, but should not be used to deprive an adverse party of the opportunity to disprove the fact. When considering preliminary objections in the nature of a demurrer, a court must severely restrict the principle of judicial notice, as the purpose of a demurrer is to challenge the legal basis for the complaint, not its factual truthfulness. In **Clouser v. Shamokin Packing Co.**, 361 A.2d 836 ([Pa. Super.] 1976), the Superior Court held that the trial court should not have taken judicial notice of facts not alleged in the complaint and said:
>
> > Although there does not seem to be any reason entirely to preclude a judge from taking judicial notice at the demurrer stage, the use of the doctrine should be severely limited: In ruling on a demurrer, the judge must decide whether the complaint itself states a cause of action…. It has been argued, therefore, that judicial notice cannot be applied to the construction of a pleading and that, in ruling upon a demurrer, while the court must take as true every fact well

- 15 -

pleaded, it must assume no others. This broad contention has been rejected as a basis for completely prohibiting the use of judicial notice in ruling upon a demurrer…. However, in light of the judge's limited function in ruling on a demurrer, there appears to be cogent reasons for urging very limited use of judicial notice in this area. A court, in ruling on a demurrer, should refrain from noticing any fact which is not literally indisputable and which the parties could not reasonably raise in further pleadings or on argument at trial.

*Id.* … at 840-41. Therefore, review should be restricted to the facts alleged in the complaint, and a trial court should not take judicial notice of collateral facts.

[A] court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court. It follows that unless the facts relied upon to establish it appear from the complaint itself, the defense of collateral estoppel may not be raised by preliminary objections.

The general rule against taking judicial notice when considering preliminary objections in the nature of a demurrer is subject to limited exceptions. ***It is appropriate for a court to take notice of a fact which the parties have admitted or which is incorporated into the complaint by reference to a prior court action.***

***220 P'ship***, 650 A.2d at 1096-97 (most internal citations and quotation marks omitted; emphasis added).

Based on the foregoing, we ascertained in ***220 P'ship*** that the partnership "did not admit to any change in its ownership interest in its downtown office building, and [the partnership's] complaint does not detail any facts or issues pleaded before another court or incorporate by reference a prior action." ***Id.*** at 1097. Accordingly, we determined that it was error for the "trial court to dismiss [the partnership's] complaint in response to preliminary objections reciting facts found in a federal action to which [the

- 16 -

partnership] had been a party." *Id.* We noted that the trial court "should not, at the preliminary objection stage of this action, have accepted as true facts which were in direct conflict with the well pleaded material facts of the complaint. Where material facts are in dispute, judicial notice may not be used to deny a party an opportunity to present contrary evidence." *Id.* (citation omitted). Thus, we reversed the trial court's order sustaining the defendants' preliminary objections.

While Appellants contend that *220 P'ship* supports their position that the trial court should not have taken judicial notice of their bankruptcy petition and the discharge order, we disagree. As FCB discerns, unlike the partnership in *220 P'ship* that disputed the change of ownership in the office building, Appellants "voluntarily filed their verified [b]ankruptcy [p]etition and have admitted each fact contained therein." FCB's Brief at 17; *see also* N.T. at 33 (arguing that the bankruptcy petition is a publicly-filed document containing admissions by Appellants). Moreover, our review of the record demonstrates that Appellants have not disputed the accuracy of any of the facts contained within their bankruptcy petition, or that the bankruptcy court subsequently entered a discharge order. To be sure, Appellants claimed at oral argument before the trial court that they failed to mention the bankruptcy proceedings in their complaint due to relevancy, not because of any factual dispute they had with that matter:

> [Appellants' counsel]: It's [Appellants'] position that [FCB] has both in its pleadings and in its argument today attempted to interject some facts that are outside of the record[:] most

- 17 -

namely[,] the bankruptcy petition, the filing, any circumstances regarding the surrender of the vehicle, any description of the sale and the sale process and several other facts that are not contained in the complaint.

[The trial court]: But, [c]ounsel, hold on. This is a little unusual, I've got to say. Okay? Why didn't you plead that and tell the [c]ourt what happened? I'm just curious why.

[Appellants' counsel]: As far as the bankruptcy filing?

[The trial court]: Yes.

[Appellants' counsel]: I don't think that it's necessarily relevant to any class claim. It doesn't necessarily make [Appellants'] claim any different.

[The trial court]: Well, let me ask you this. If I were to … overrule it and require [FCB] to answer, do you think along the way you are going to get a motion that this is not a proper class represent[ative]?

[Appellants' counsel]: I would anticipate that they make that argument at that point, but at this stage in the preliminary objections, it's included in those facts [*sic*], which is not appropriate.

N.T. at 34-35.

Thus, we conclude that the trial court could take judicial notice of Appellants' bankruptcy petition and the discharge order, as the facts contained therein were admitted by Appellants and therefore not in dispute. *See 220 P'ship*, 650 A.2d at 1097 ("It is appropriate for a court to take notice of a fact which the parties have admitted….") (citation omitted); *accord Kelly v. Kelly*, 887 A.2d 788 (Pa. Super. 2005) (determining that the trial court's consideration of the defense of *res judicata* raised in a preliminary objection in the nature of a demurrer was not improper where the facts of the case were not in dispute, and therefore, the appellant was not deprived of an opportunity

to prove or disprove a fact); *see also Bykowski*, 625 A.2d at 1258 n.1 (stating that "the court has the right to take judicial notice of public documents") (citation omitted). However, to the extent that the trial court considered other facts — aside from those contained in the bankruptcy petition and discharge order — that were not alleged in Appellants' complaint, we deem the trial court's reliance on those facts to be improper and will proceed in our review of Appellants' remaining issues accordingly.

**Issue 2**

In Appellants' second issue, they claim that FCB's "pre-sale notice did not meet the requirements of the UCC, and [FCB] is not entitled to a 'safe harbor' defense because it did not use the UCC's 'safe harbor' form." Appellants' Brief at 18 (capitalization and emphasis omitted). No relief is due on this basis.

*UCC*

To begin our review, we set forth Section 9614 of the UCC, which addresses the contents and form of notification that must be provided before the disposition of collateral in a consumer-goods transaction. Section 9614 states:

In a consumer-goods transaction, the following rules apply:

(1) A notification of disposition must provide the following information:

(i) the information specified in section 9613(1) (relating to contents and form of notification before disposition of collateral: general);

(ii) a description of any liability for a deficiency of the person to which the notification is sent;

(iii) a telephone number from which the amount which must be paid to the secured party to redeem the collateral under section 9623 (relating to right to redeem collateral) is available; and

(iv) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

(2) A particular phrasing of the notification is not required.

(3) The following form of notification, when completed, provides sufficient information:

_____ (Name and address of secured party)

_____ (Date)

## NOTICE OF OUR PLAN TO SELL PROPERTY

_____ (Name and address of any obligor who is also a debtor)

Subject: _____ (Identification of Transaction)

We have your _____ (describe collateral) because you broke promises in our agreement.

(For a public disposition:)

We will sell _____ (describe collateral) at public sale. A sale could include a lease or license. The sale will be held as follows:

Date:_____

Time:_____

Place:_____

You may attend the sale and bring bidders if you want.

(For a private disposition:)

We will sell _____ (describe collateral) at private sale sometime after _____ (date). A sale could include a lease or license. The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than

you owe, you (will or will not, as applicable) still owe us the difference. If we get more money than you owe, you will get the extra money unless we must pay it to someone else. You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at _____ (telephone number). If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at _____ (telephone number) (or write us at _____ (secured party's address)) and request a written explanation. (We will charge you $___ for the explanation if we sent you another written explanation of the amount you owe us within the last six months.) If you need more information about the sale, call us at _____ (telephone number) (or write us at _____ (secured party's address)). We are sending this notice to the following other people who have an interest in _____ (describe collateral) or who owe money under your agreement: _____ (Names of all other debtors and obligors, if any)

**(End of Form)**

(4) A notification in the form of paragraph (3) is sufficient even if additional information appears at the end of the form.

(5) A notification in the form of paragraph (3) is sufficient even if it includes errors in information not required by paragraph (1) unless the error is misleading with respect to rights arising under this division.

(6) If a notification under this section is not in the form of paragraph (3), law other than this division determines the effect of including information not required by paragraph (1).

13 Pa.C.S. § 9614.

As incorporated by Section 9614(1)(i), Section 9613(1) provides:

(1) The contents of a notification of disposition are sufficient if the notification:

(i) describes the debtor and the secured party;

(ii) describes the collateral which is the subject of the intended disposition;

(iii) states the method of intended disposition;

(iv) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(v) states the time and place of a public disposition or the time after which any other disposition is to be made.

13 Pa.C.S. § 9613(1).

In the case *sub judice*, FCB sent a pre-sale notice to each Appellant.

**See** Complaint, 10/13/20, at ¶ 33; **see also id.** at Exhibit 2 ("Pre-Sale

Notice").  The pre-sale notice stated:

[FCB]
Consumer Special Assets Department
654 Philadelphia St.
INDIANA, PA 15701
PHONE 800-221-8605
FAX 724-463-5665

## NOTICE OF REPOSSESSION AND PLAN TO SELL VEHICLE

Date: 10/15/18
Account Number: [Redacted]

Dear [Appellant] CHRISTINA M[.] DHAPPART:

We have your 2013 FORD TAURUS [Vehicle Identification Number Redacted] because you broke promises in our agreement.  The vehicle is being stored at Altoona Auto Auction at the address below.  We will sell this vehicle at public sale.  A sale could include a lease or license.  The sale will be held as follows:

Date: Monday, NOVEMBER 5TH 2018 until Friday, NOVEMBER 9TH 2018*

Time: 9:00 A.M. to 5:00 P.M. local time*

Location: Altoona Auto Auction, 1710 Margaret Avenue, Altoona, Pennsylvania 16603

You may attend the sale and bring bidders if you want.

The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If we receive less money than you owe, you will still owe us the difference.  If we get more money than you owe, you will get the extra money unless we are required to pay it to someone else.  You can get the vehicle back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.  To learn the exact amount you must pay, call us at 800-221-8605.  If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 800-221-8605 or write us at [FCB], Consumer Special Assets Department, 654 Philadelphia Street, Indiana, Pennsylvania 15701, and request a written explanation.  If you need more information about the sale, call us at 800-221-8605 or write us at the address above.

We are sending this notice to the following other people who have an interest in the vehicle or who owe money under your agreement: [the other Appellant,] SCOTT A[.] DHAPPART.

*The sale will be conducted using a sealed bid auction with bids accepted during the dates specified above (the "Auction Period"). You may submit a bid during the Auction Period by using Altoona Auto Auction.  All bids will be opened at the conclusion of the Auction Period and the highest bid will be submitted to us.  We may accept or reject any bid in our sole discretion.  If the vehicle is not sold in the auction, we may sell the vehicle in a private sale at any time after the Auction Period.

An itemized statement of the amount that you are required to pay us to redeem the vehicle as of the date of this notice is below:

| | |
|---|---|
| Principal Balance | $13,314.99 |
| Interest Due | $153.89 |
| Late Charges Due | $13.75 |
| Repossession Expense | $350.00 |
| Expenses of Repairing | $0.00 |
| TOTAL AMOUNT DUE** | $13,832.63 |

**In addition to paying us the Total Amount Due, you must also pay storage fees of $25 per day and other costs charged by Altoona Auto Auction.  These charges must be paid to Altoona Auto Auction at the time when you redeem your vehicle.

Certified Mail No. 7015 0640 0007 7274 8011       [FCB]

**NOTICE:** You have the right to reclaim personal property in the vehicle within thirty (30) days after the date of this letter. The personal property may be reclaimed at Our Enterprise. Please call 814-942-4213 to arrange a time to pick up the personal property. If the personal property is not reclaimed at the expiration of the thirty (30) days, the property may be disposed of.

Pre-Sale Notice at 1 (single, unnumbered page).[4]

Here, in determining whether FCB's pre-sale notice complied with Section 9614, the trial court explained:

In [FCB's pre-sale notice], there is no information that appears to be missing in order to comply with [Section] 9614. In fact, [FCB] has almost copied the safe harbor language *verbatim*, just adding in words or other sentences where needed, which would not make the [n]otice invalid according to [Section] 9614.

However, one issue that [Appellants] have cited is that the [pre-sale notice's] stated [d]ate and [t]ime of public sale are from November 5th[,] 2018-November 9th[,] 2018 from 9:00 A.M. to 5:00 P.M. local time. [Appellants] argue that the date and time of the sale were not limited in scope, to one day for example. It is unclear if the date and time requirement in the statute is required to be more limited in scope, such as one calendar day. While [Appellants] argue this time period is invalid and needs to be more limited, [they] provide no legal basis for this assertion. A specific date and time could not be given based on how the sale process occurred as argued by defense counsel.[4]

> [4] Defense counsel explains that the bidding process is a sealed, blind bid auction where bidders submit bids

---

[4] Appellant Scott d'Happart received a substantially identical pre-sale notice. **See** Complaint at ¶ 33 (averring that FCB "issued substantially identical documents titled 'Notice of Repossession and Plan to Sell Property' … addressed separately to [Appellants] Scott A. d'Happart and Christina M. d'Happart…"); FCB's Brief at 8 ("[FCB] sent identical Notices of Repossession and Plan to Sell Vehicle … to both [Appellants] Scott and Christina [d]'Happart, as co-borrowers…."). Consequently, we conduct a single examination of the pre-sale notices sent to each Appellant and refer to the notices in the singular at times throughout this writing.

throughout the entire bidding time frame. The creditor may look at all bids at the end of the time frame and decide whether to take one of the bids submitted or subject the collateral to another sale process. Defense counsel also explains that [Appellants] had every ability to participate in that auction since it is a public sale. [N.T. at 17-18].

TCO at 11-12.

On appeal, Appellants essentially argue that FCB's pre-sale notice does not comply with Section 9614.[5] We disagree.

Initially, FCB's pre-sale notice contains the information required by Section 9613(1), as mandated by Section 9614(1)(i). It describes the debtor (Appellants), the secured party (FCB), and the collateral which is the subject of the intended disposition (the 2013 Ford Taurus). **See** 13 Pa.C.S. § 9613(1)(i), (ii).[6] In addition, the pre-sale notice sets forth the method of

_____

[5] Appellants also argue that FCB is not entitled to Section 9614(3)'s safe harbor protection because FCB did not exactly follow the form of the notification set forth in the statute. **See** Appellants' Brief at 19-24; **but see** 13 Pa.C.S. § 9614(2) ("A particular phrasing of the notification is not required."). Appellants point out that FCB's pre-sale notice uses a different title than Section 9614(3)'s form, omits the name and address of Appellants, excludes language pertaining to the cost of an accounting, and does not provide a singular date and time for the sale of the vehicle. **Id.** at 23-24. We need not address Appellants' argument that FCB has to follow the safe harbor form exactly to enjoy the safe harbor protection, choosing instead to simply examine whether FCB's pre-sale notice complies with the requirements of Section 9614.

[6] Appellants claim that FCB failed to identify itself as the secured party and Appellants as the debtors. Appellants' Brief at 26. Specifically, they say that "one of several material items from the statutory 'safe harbor' form missing … was the identification of the name and address of the obligors." **Id.** Further, they complain that, "[w]hile [FCB] claims to have identified the secured party, its supposed identification lists *both* [FCB] *and* Altoona Auto Auction, never

intended disposition (public sale), and the date (November 5 through November 8, 2018), time (9 A.M. to 5:00 P.M.), and location of the public sale (Altoona Auto Auction, 1710 Margaret Avenue, Altoona, Pennsylvania 16603). **See** 13 Pa.C.S. § 9613(1)(iii), (v).[7]

---

identifying either as the secured party." **Id.** (citation omitted; emphasis in original). We reject these claims. First, with respect to Appellants' claim that the pre-sale notice did not identify the name and address of the debtors, we note that the pre-sale notices respectively sent to each Appellant identified them by name and listed their account number and vehicle identification number. Additionally, the statute does not explicitly require FCB to include their addresses. **See** 13 Pa.C.S. § 9613(1)(i) (stating that the contents of a notification of disposition are sufficient if the notification "describes the debtor"). Second, regarding Appellants' claim that FCB failed to identify itself as the secured party, we observe that the pre-sale notice contains the name and address of FCB, states that Appellants broke promises in their agreement with it and that Appellants owe money to FCB, and conveys that the vehicle is merely being stored at Altoona Auto Auction. **See also** FCB's Brief at 33 (additionally noting that Appellants listed FCB as the secured creditor in their verified bankruptcy petition). Thus, we conclude that FCB sufficiently identified itself as the secured party and Appellants as the debtors.

[7] Appellants complain that FCB gave a range of dates in its pre-sale notice, purportedly in contravention of Section 9613(1)(v). Appellants' Brief at 27-28; **see also** 13 Pa.C.S. § 9613(1)(v) (requiring that the notification state "the time and place of a public disposition"). They contend that the phrase 'the time and place of a public disposition' is "conjunctive, and the secured party must supply both 'the time' and 'the date' to comply with the disclosure requirement. The phrase is also expressed in the singular, allowing for only one time on one date." Appellants' Brief at 28 (emphasis in original). In addition, Appellants argue that "providing a span of an entire business week over which the [v]ehicle could be sold is problematic for practical reasons. If a … sufficient bid is tendered early in the sale period, a borrower could appear at the specified 'date and time' only to find the property had already been sold." **Id.** However, as FCB persuasively discerns, "nothing in [the statute] mandates that the public sale be held on a single date or at a single, specific hour[,]" and Appellants "cite to no authority in support of this proposition…." FCB's Brief at 30. FCB also correctly states that, "[w]hile the trial court must

FCB's pre-sale notice also complies with Section 9613(1)(iv)'s requirement to "state[] that the debtor is entitled to an accounting of the unpaid indebtedness and state[] the charge, if any, for an accounting…." **_See_** 13 Pa.C.S. § 9613(1)(iv). The pre-sale notice conveys that "[t]o learn the exact amount you must pay, call us at 800-221-8605. If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 800-221-8605 or write us … and request a written explanation." **_See_** Pre-Sale Notice at 1 (single, unnumbered page). We deem this sufficient to satisfy Section 9613(1)(iv).[8]

---

accept all well-pleaded facts as true and the material inferences that can be derived from those facts, it need not accept as true conclusions of law…." **_Id._** at 36-37 (cleaned up). Furthermore, Appellants' argument that the property could be sold early in the sale period before a borrower is able to appear is likewise meritless, as FCB's pre-sale notice specifically states that "[a]ll bids will be opened at the conclusion of the Auction Period and the highest bid will be submitted to us." Pre-Sale Notice at 1 (single, unnumbered page). As such, no relief is due on this basis.

[8] Appellants aver that the pre-sale notice "did not include an affirmative statement that the debtor is **entitled** to an accounting of unpaid indebtedness with a statement of the charge for such." Appellants' Brief at 28 (emphasis in original; citation omitted). We disagree. FCB used the language provided in the safe harbor form to indicate that Appellants were entitled to an accounting. **_Cf._** Pre-Sale Notice at 1 ("To learn the exact amount you must pay, call us at 800-221-8605. If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 800-221-8605 or write us at [FCB], Consumer Special Assets Department, 654 Philadelphia Street, Indiana, Pennsylvania 15701, and request a written explanation.") (single, unnumbered page) **_with_** 13 Pa.C.S. § 9614(3) ("To learn the exact amount you must pay, call us at _____ (telephone number). If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at _____ (telephone number) (or write us at

FCB's pre-sale notice likewise satisfies the remaining requirements of Section 9614(1).  The pre-sale notice includes "a description of any liability for a deficiency of the person to which the notification is sent[.]"  **See** 13 Pa.C.S. § 9614(1)(ii).  Specifically, it states that "[t]he money that we get from the sale (after paying our costs) will reduce the amount you owe.  If we receive less money than you owe, you will still owe us the difference."  **See** Pre-Sale Notice at 1 (single, unnumbered page).[9]  In addition, it sets forth a

_____

_____ (secured party's address)) and request a written explanation.").  Moreover, with respect to the accounting charge, FCB observes that Appellants "did not allege in their [c]omplaint that they were charged any fee for an accounting or that they paid any such fee."  FCB's Brief at 27; **id.** at 34 (claiming that FCB "did not charge a fee for an accounting, and [Appellants] do not allege otherwise").  Further, FCB notes that:

> Section 9613(1)(iv), incorporated by referenced by Section 9614(1)(i)[,] only requires the inclusion of the amount to be charged for an accounting "if any."  In fact, the entirety of the sentence indicating the amount to be charged for an accounting in the safe harbor [form] is in parentheses.  As reflected by the other provisions in the safe harbor [form] that also appear in parentheses, this means that the sentence is optional and removable.

**Id.** at 27 (internal citations omitted); **see also** 13 Pa.C.S. § 9614(3) ("(We will charge you $____ for the explanation if we sent you another written explanation of the amount you owe us within the last six months.)").  As a final note, we point out that the pre-sale notice itself included an itemized statement of the amount that Appellants were required to pay to FCB to redeem the vehicle.  **See** Pre-Sale Notice at 1 (single, unnumbered page).  Thus, we conclude that no relief is due on this basis.

[9] Appellants aver that FCB failed to advise them of their potential liability for a deficiency pursuant to Section 9614(1)(ii) because FCB "did not send *any* [p]ost-[s]ale [n]otice to [Appellants], and now contends that the information in its [p]re-[s]ale [n]otice had been inaccurate since [Appellants] would <u>not</u>

telephone number where Appellants could inquire about the amount which must be paid to FCB to redeem the collateral, as well as a telephone number and mailing address from which they could seek additional information concerning the disposition and the obligation secured. *See* 13 Pa.C.S. § 9614(1)(iii), (iv); *see* Pre-Sale Notice at 1 (single, unnumbered page) ("To learn the exact amount you must pay, call us at 800-221-8605. … If you need more information about the sale, call us at 800-221-8605 or write us at the address above.").[10]   Accordingly, we conclude that FCB's pre-sale notice complied with Section 9614(1).

---

be liable for any deficiency."   Appellants' Brief at 25 (citation and footnote omitted; emphasis in original).   We reject this claim.   FCB explains that, "[p]ursuant to the terms of the RISC, [Appellants] were liable for any deficiency if [FCB] received less from the sale than they owed on the [v]ehicle. [FCB] ultimately did not seek to collect the deficiency because the debt was discharged in bankruptcy, which is why [FCB] did not send a deficiency notice."   FCB's Brief at 38-39 (citation omitted); *see also* Issue 1, *supra* (determining that we can take judicial notice of the bankruptcy petition and discharge order).   Further, FCB says that "the decision not to send a deficiency notice does not somehow render the [pre-sale n]otice legally insufficient.   To the contrary, by using the [language provided in the] safe harbor [form], the explanation of the deficiency in the [pre-sale n]otice was sufficient as a matter of law."   *Id.* at 39 (citation omitted).   Again, we concur with FCB.

[10] Appellants assert that the pre-sale notice "failed the requirement of [S]ection 9614(1)(iii) of providing a telephone number to determine the amount [Appellants] would need to pay — instead, it provided a telephone number for only <u>part</u> of those payments, and [Appellants] could only learn how much more they would be required to pay from 'Altoona Auto Auction at the time when you redeem your vehicle.'"   Appellants' Brief at 25 (citation omitted; emphasis in original).   We disagree that FCB's pre-sale notice does not satisfy Section 9614(1)(iii).   As set forth above, Section 9614(1)(iii) requires "a telephone number from which the amount which must be paid to

*MVSFA*

Appellants next contend that FCB's pre-sale notice violated the mandatory provisions of the MVSFA, which they say FCB was obligated to comply with under the UCC. **See** Appellants' Brief at 29.[11]  They explain that, "[w]hile all of [their] causes of action arise under the UCC, the MVSFA addresses the subject of repossessions and disposition sales in the context of

_____

**the secured party** to redeem the collateral under section 9623 (relating to right to redeem collateral)…[.]"  13 Pa.C.S. § 9614(1)(iii) (emphasis added). Here, Appellants would not be paying the $25/day storage fee to FCB (*i.e.*, the secured party), but instead to Altoona Auto Auction.  **See** Pre-Sale Notice at 1 ("In addition to paying us the Total Amount Due, you must also pay storage fees of $25 per day and other costs charged by Altoona Auto Auction. These charges **must be paid to Altoona Auto Auction** at the time when you redeem your vehicle.") (single, unnumbered page; emphasis added). Moreover, as FCB notes, "Section 9614 does not require that [FCB] provide the phone number to the [v]ehicle's storage location, nor is it included in the safe harbor notice."  FCB's Brief at 40 (citation omitted).  Thus, based on the plain language of the statute, Appellants do not demonstrate that a violation of Section 9614(1)(iii) occurred.

[11] Both parties agree that there is no private right of action under the MVSFA and, therefore, we do not delve further into whether a private right of action exists.  **See** Appellants' Brief at 10; FCB's Brief at 23 n.8.  Notwithstanding Appellants' conceding that no private right of action exists under the MVSFA, they argue that "[t]he UCC imposes the requirement of commercial reasonableness upon all aspects of the disposition sale, and [FCB's] MVSFA violations meant that the sale had been conducted illegally.  An illegal sale denying [Appellants] of their protections under the law cannot meet the UCC's 'commercial reasonableness' requirement."  Appellants' Brief at 10-11; **see also** 13 Pa.C.S. § 9610(b) ("Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable.").  Thus, Appellants assert that they "did not allege any claim under the MVSFA, rather [they] alleged *only* a claim under the UCC, premised upon [FCB's] failure to ensure that all aspects of its disposition were 'commercially reasonable.'"  Appellants' Brief at 11 (emphasis in original).

consumer-goods transactions — imposing further legal obligations upon [FCB]." *Id.* Further, they advance that "controlling case law shows that courts *must* construe the UCC and the MVSFA *in pari materia*, as a single statute...." *Id.* (emphasis in original); *see also* 1 Pa.C.S. § 1932 ("(a) Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things. (b) Statutes *in pari materia* shall be construed together, if possible, as one statute.").[12]

Assuming *arguendo* that FCB was obligated to comply with the MVSFA under the UCC, Appellants would nevertheless fail to demonstrate that FCB

_____

[12] *See also* Complaint at ¶¶ 25-26 ("Repossessors of vehicles … are required to comply with both the UCC and the MVSFA…, which must be applied *in pari materia*. The MVSFA sets forth the notice requirements for secured parties who repossess other than by legal process. Likewise, the UCC sets forth the notice requirements for secured parties who repossess other than by legal process. Therefore, these statutes clearly relate to the same persons or things and/or the same classes of persons or things — debtors whose vehicles were repossessed outside of judicial process.") (citations omitted).

violated the MVSFA.[13, 14]  Appellants claim that FCB failed to comply with Section 6254 of the MVSFA, which provides:

> **(a) General rule.--**If repossession of a motor vehicle subject to an installment sale contract is effected other than by legal process, the holder shall immediately furnish the buyer with a written notice of repossession.
>
> **(b) Delivery.--**The notice of repossession shall be delivered in person or sent by registered or certified mail to the last known address of the buyer.
>
> **(c) Contents.--**The notice of repossession shall contain the following:
>
>> (1) The buyer's right to reinstate the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle.

---

[13] In ruling on this issue, the trial court determined that the relevant UCC and MVSFA provisions need not be construed *in pari materia*.  **See** TCO at 15.  In reaching this conclusion, it explained that "[t]he statutory language in the relevant UCC and MVSFA provisions is clear and unambiguous[,]" and that "a court may not resort to the rules of statutory construction, including *in pari materia*, where, as here, the statutory language is clear."  **Id.** (citing **Oliver v. City of Pittsburgh**, 11 A.3d 960, 965 (Pa. 2011)); **see also DeForte v. Borough of Worthington**, 212 A.3d 1018, 1022 (Pa. 2019) ("Laws which apply to the same persons or things or the same class of persons or things are *in pari materia* and, as such, should be read together where reasonably possible.  The concept has long been recognized in Pennsylvania decisional law, and it is codified in the Statutory Construction Act – where it is also applied to 'parts of statutes.'  Traditionally, the rule has been used as an aid to construction when resolving statutory ambiguities.") (citations omitted)).  Notwithstanding the trial court's determination that the relevant UCC and MVSFA provisions need not be construed *in pari materia*, it opined that FCB's pre-sale notice nevertheless complied with the MVSFA's requirements.  **See** TCO at 13-15.

[14] Because we conclude that Appellants fail to show that FCB violated the MVSFA, we need not decide whether the UCC and the MVSFA must be construed *in pari materia*.

(2) An itemized statement of the total amount required to redeem the motor vehicle by reinstatement or payment of the contract in full.

(3) Notice to the buyer of the holder's intent to resell the motor vehicle at the expiration of 15 days from the date of mailing the notice.

(4) The place where the motor vehicle is stored.

(5) The name and address of the person to whom the buyer shall make payment or on whom the buyer may serve notice.

(6) A statement that any personal property left in the repossessed vehicle will be held for 30 days from the date of the mailing of the notice.

(7) The name and address of the person that the buyer may contact to receive a full statement of account as provided by section 6230 (relating to statement of account to buyer).

12 Pa.C.S. § 6254.

Appellants initially contend that FCB failed to comply with Section 6254(c)(1). *See* 12 Pa.C.S. § 6254(c)(1) (stating that the notice of repossession shall contain, *inter alia*, "[t]he buyer's right to reinstate the contract, *if the holder extends the privilege of reinstatement and redemption of the motor vehicle*") (emphasis added). Appellants argue:

[FCB] failed to disclose any information concerning [Appellants'] reinstatement rights. That omission is particularly problematic in this case since [FCB] had an obligation to supply that information under the [RISC], which provided:

If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.

Once again, the [t]rial [c]ourt improperly accepted [FCB's] unverified factual allegations having no support in the record by

- 33 -

finding that … "[FCB] chose not to allow reinstatement."  In so doing, the [t]rial [c]ourt deprived [Appellants] of any opportunity for discovery upon the issue of whether [FCB] made any determination of [Appellants'] reinstatement rights.  The [t]rial [c]ourt also ignored that, under [the RISC] *and* Pennsylvania law, [FCB] had a duty to communicate that information to [Appellants] — and it failed to do that.

Appellants' Brief at 32-33 (internal citations omitted; emphasis in original).

This argument warrants no relief.  As FCB astutely observes, Appellants "do not and cannot plead any facts showing that they had any right to reinstatement[,]" and the MVSFA does not require FCB "to disclose a non-existent reinstatement right in the repossession notice."  FCB's Brief at 47 (footnote, emphasis, and unnecessary capitalization omitted).  FCB emphasizes that the RISC does not provide Appellants with an actual right to reinstatement, as the RISC "expressly states that [FCB] 'may, **at [its] option**,' allow buyers to reinstate and that [FCB] '**will tell you if you may reinstate** and how much to pay **if you may**.'"  *Id.* (emphasis in original; citation omitted).  Thus, because Appellants do not allege or otherwise establish that FCB extended the privilege of reinstatement to them, FCB had no notification obligation under Section 6254(c)(1).

We also conclude that FCB's pre-sale notice meets the remaining requirements of Section 6254(c).  It contains an itemized statement of the total amount required to redeem the vehicle by payment of the contract in full ($13,832.63), notice to Appellants of FCB's intent to resell the motor vehicle at the expiration of 15 days from the date of mailing the notice (stating that a sale will take place from November 5, 2018 through November 9, 2018,

which was 21 days from the date of the notice), and the place where the vehicle is stored ("The vehicle is being stored at Altoona Auction at the address below."). *See* 12 Pa.C.S. § 6254(c)(2)-(c)(4). The pre-sale notice also includes the name and address of the person to whom Appellants shall make payment (FCB's Consumer Special Assets Department at 654 Philadelphia Street, Indiana, Pennsylvania 15701, and Altoona Auto Auction, 1710 Margaret Avenue, Altoona, Pennsylvania 16603), a statement that any personal property left in the repossessed vehicle will be held for 30 days from the date of the mailing of the notice ("You have the right to reclaim personal property in the vehicle within thirty (30) days after the date of this letter. … Please call 814-942-4213 to arrange a time to pick up the personal property"), and the name and address of the person that Appellants may contact to receive a full statement of account (FCB's Consumer Special Assets Department at 654 Philadelphia Street). *See* 12 Pa.C.S. § 6254(c)(5)-(c)(7).[15] Thus, even if FCB was obligated to comply with Section 6254 of the MVSFA, we would determine that FCB met its requirements.

_____

[15] Appellants argue that the pre-sale notice improperly required payments to Altoona Auto Auction, and that FCB could only provide the information for one payee. *See* Appellants' Brief at 33-34 ("By improperly advising [Appellants] that they would be required to pay an unliquidated amount to Altoona Auto Auction, [FCB] also failed the requirement of [S]ection 6254(c)(5) of providing the 'name and address of the person to whom the buyer shall make payment or on whom the buyer may serve notice.' Rather than provide the information for one payee, as legally required, the [p]re-[s]ale [n]otice improperly required additional payments to Altoona Auto Auction (*i.e.*, an unsecured party, with no privity to [Appellants]). Likewise, the same improper

**Issue 3**

In Appellants' third issue, they argue that the trial court "erred by determining that [FCB] had not been required to issue any [p]ost-[s]ale [n]otice to [Appellants] since it did not make any attempt to collect a deficiency." Appellants' Brief at 35 (citation omitted). They claim that this determination was incorrect as "(i) the law plainly and unambiguously required [FCB] to issue a [p]ost-[s]ale [n]otice to [Appellants]; (ii) [Appellants] are entitled to the remedies under the UCC for [FCB's] violations of the MVSFA; and (iii) [FCB's] unverified allegation that it did not attempt to collect a deficiency is unsupported by the record." *Id.*

*UCC*

Notwithstanding Appellants' arguments, the trial court ascertained that, under the UCC's Section 9616(b), FCB did not have to send a deficiency notice because FCB "did not attempt to collect the deficiency on the [v]ehicle because

---

instruction for payments to Altoona Auto Auction also triggered [FCB's] violation of [S]ection 6254(c)(7), which mandated the disclosure of the 'name and address of the person that the buyer may contact to receive a full statement of account' under [S]ection 6254(c)(7)[,] since there would be no single payee.") (citations omitted). However, Appellants provide no legal support or analysis for these contentions regarding a single payee, and we therefore deem their argument waived. **See In re S.T.S., Jr.**, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (citations and quotation marks omitted).

of [Appellants'] bankruptcy petition…." TCO at 13.  Section 9616(b) provides

the following:

> **(b) Explanation of calculation.--**In a consumer-goods transaction in which the debtor is entitled to a surplus ***or a consumer obligor is liable for a deficiency*** under section 9615 (relating to application of proceeds of disposition; liability for deficiency and right to surplus), the secured party shall comply with one of the following paragraphs:
>
>> (1) Send an explanation to the debtor or consumer obligor, as applicable, after the disposition and:
>>
>>> (i) ***before or when the secured party*** accounts to the debtor and pays any surplus or ***first makes written demand on the consumer obligor after the disposition for payment of the deficiency***; and
>>>
>>> (ii) within 14 days after receipt of a request.[16]
>>
>> (2) In the case of a consumer obligor who is liable for a deficiency, within 14 days after receipt of a request, send to the consumer obligor a record waiving the secured party's right to a deficiency.

13 Pa.C.S. § 9616(b) (some emphasis added).

The relevant comment to Section 9616(b) states:

> **2. Duty to Send Information Concerning Surplus or Deficiency.**  This section reflects the view that, in every consumer-goods transaction, the debtor or obligor is entitled to know the amount of a surplus or deficiency and the basis upon which the surplus or deficiency was calculated.  Under subsection (b)(1), ***a secured party is obligated to provide this information*** (an "explanation," defined in subsection (a)(1)) ***no later than*** the time that it accounts for and pays a surplus or ***the***

---

[16] "Request" is defined as "[a] record: (1) authenticated by a debtor or consumer obligor; (2) requesting that the recipient provide an explanation; and (3) sent after disposition of the collateral under [S]ection 9610 (relating to disposition of collateral after default)."  13 Pa.C.S. § 9616(a).  Appellants do not allege that they made a request to FCB for an explanation.

***time of its first written attempt to collect the deficiency***. The obligor need not make a request for an accounting in order to receive an explanation. ***A secured party who does not attempt to collect a deficiency in writing or account for and pay a surplus has no obligation to send an explanation under subsection (b)(1) and, consequently, cannot be liable for noncompliance.***

A debtor or secondary obligor need not wait until the secured party commences written collection efforts in order to receive an explanation of how a deficiency or surplus was calculated. Subsection (b)(2) obliges the secured party to send an explanation within 14 days after it receives a "request" (defined in subsection (a)(2)).

Comment to 13 Pa.C.S. § 9616 (some emphasis added).

Based on Section 9616(b)'s plain language, we discern no violation of it by Appellants. Because FCB could not collect any deficiency due to the bankruptcy court's discharge order, it was not obligated to send an explanation under Section 9616(b)(1).[17]

_____

[17] We also note that Appellants did not allege in their complaint that they were entitled to a surplus from the sale of the vehicle and/or that FCB tried to account for and pay them a surplus. Instead, Appellants averred that they did not know if their vehicle had been sold, and that they "***may have been*** entitled to a payment from the surplus of a sale, but [FCB's] failure to supply any [d]isposition [n]otice has left them without any method to determine whether that is the case." ***See*** Complaint at ¶ 53 (emphasis added). However, Section 9616(b) provides that the secured party only must send an explanation if the debtor ***is actually entitled to a surplus*** and must only do so after the disposition and ***before or when it accounts to the debtor and pays any surplus***. ***See*** 13 Pa.C.S. § 9616(b)(1)(i) ("In a consumer-goods transaction in which the debtor ***is entitled to a surplus***…, the secured party shall comply with one of the following paragraphs… [s]end an explanation to the debtor or consumer obligor, as applicable, after the disposition and … ***before or when the secured party accounts to the debtor and pays any surplus***…."); ***see also*** Comment to 13 Pa.C.S. § 9616 ("A secured party who does not attempt to … account for and pay a surplus has no obligation to send

*MVSFA*

Appellants next argue that, "[e]ven if [FCB] was not required to issue a [p]ost-[s]ale [n]otice under [S]ection 9616 of the UCC[, S]ection 6261(d) of the MVSFA unmistakably imposed that obligation." Appellants' Brief at 36. Section 6261 of the MVSFA states the following, in pertinent part:

**§ 6261. Deficiency judgment**

**(a) General rule.--**If the proceeds of a resale under section 6260 (relating to sale of motor vehicle after repossession) are not sufficient to defray the expenses regarding the repossessed motor vehicle, including the costs under section 6256 (relating to buyer's liability for costs), the net balance due on the installment sale contract and the amount of accrued late charges authorized by this chapter, the installment seller or holder **may** recover the deficiency from the buyer or from any person who has succeeded to the obligations of the buyer.

\*\*\*

**(d) Deficiency notice.--**Within 30 days after the sale of a repossessed motor vehicle, the installment seller or holder shall deliver in person or send by registered or certified mail to the last

---

an explanation under subsection (b)(1) and, consequently, cannot be liable for noncompliance."). Thus, unless Appellants were actually entitled to a surplus and FCB attempted to account for and pay a surplus (neither of which Appellants have alleged), FCB had no obligation to send an explanation under Section 9616. Moreover, as an aside, we additionally point out that, in their bankruptcy petition, Appellants stated that the vehicle was worth significantly less than the amount they owed to FCB under the RISC, making any expectation Appellants had of a surplus from the sale dubious. **See** footnote 1, **supra**; **see** Issue 1, **supra** (stating that we may take judicial notice of the facts contained within Appellants' bankruptcy petition). We also note that, if Appellants were concerned about finding out what happened to their vehicle, they could have made a request for an explanation pursuant to Section 9616(b)(1)(ii). **See** 13 Pa.C.S. § 9616(b)(1)(ii) (stating that the secured party shall send an explanation to the debtor after the disposition and within 14 days after receipt of a request); **see also** footnote 16, **supra** (setting forth the definition of 'request').

known address of the buyer ***a deficiency notice*** containing the following:

> (1) The sale price of the repossessed motor vehicle.
>
> (2) The itemized costs associated with the repossession and sale of the repossessed motor vehicle.
>
> (3) ***The amount of the deficiency owed by the buyer***.

12 Pa.C.S. § 6261(a), (d) (some emphasis added).

Appellants reiterate that the UCC and the MVSFA "must be read *in pari materia*[,]" and therefore say they "appropriately sought a remedy under the UCC for [FCB's] noncompliance with Section 6261 of the MVSFA."  Appellants' Brief at 37 (citations omitted).   Appellants also emphasize that Section 6261(d) states that the installment seller or holder '***shall*** deliver' a deficiency notice to the buyer, suggesting that the installment seller or holder had to send the notice regardless of any attempt to collect a deficiency.  ***See id.*** at 36; Appellants' Reply Brief at 5-6.

In addressing this issue, the trial court — despite determining that the UCC and the MVSFA provisions need not be construed *in pari materia* — nevertheless discerned that FCB did not violate Section 6261(d) because FCB "did not attempt to collect the deficiency on the vehicle."  TCO at 15.   In addition, FCB argues:

> [T]he Pennsylvania Statutory Construction Act states that "statutes *in pari materia* shall be construed together, if possible, as one statute."  1 Pa.C.S. § 1932.  Here, the *in pari materia* doctrine is simply not applicable and cannot otherwise impose a **conflicting** duty to send a deficiency notice because the UCC **unambiguously** states that **no such notice is required**.  [FCB] could not (and did not) attempt to collect any deficiency balance as a matter of law because the debt was discharged by the

bankruptcy court. 11 U.S.C. § 524(a)(2).[18] Thus, the *in pari materia* doctrine does not apply, and the MVSFA's requirements relating to the contents of a deficiency notice when such a notice is required are irrelevant here.

FCB's Brief at 58 (emphasis in original).

As FCB alludes, assuming *arguendo* that the UCC and the MVSFA must be read *in pari materia*, we fail to see how trying to construe the UCC's Section 9616 and the MVSFA's Section 6261 together as one statute would override Section 9616's explicit pronouncement that no deficiency notice is required to be sent where the secured party does not attempt to collect a deficiency. Instead, if we were to construe Section 9616 and Section 6261 together as one statute as Appellants contend we should, we would determine that Section 9616's clear directive that the secured party does not need to send notice

_____

[18] The discharge order also advises:

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

FCB's Preliminary Objections at Exhibit B ("Discharge Order") at 1 (emphasis in original). **See also** Issue 1, **supra** (explaining that we may take judicial notice of discharge order).

where it does not attempt to collect a deficiency would control, given that Section 6261 does not address the specific circumstance of a secured party's not attempting to collect a deficiency.[19]  Thus, we disagree with Appellants' argument that, if the statutes are construed *in pari materia*, FCB had to send a deficiency notice under the MVSFA's Section 6261, where FCB did not try to collect the deficiency.

*FCB's "Unverified Allegation"*

---

[19] Appellants argue that "the UCC did not *prevent* [FCB] from sending [a deficiency] notice….  Thus, the unequivocal requirement to issue a [deficiency n]otice, irrespective of any attempt to collect a deficiency, imposed under the MVSFA — which must be read *in par[i] materia* with the UCC — incorporated that same requirement into the UCC."  Appellants' Reply Brief at 5-6 (emphasis in original).  We reject this claim.  First, in making this assertion, Appellants urge us to ignore the plain language of the UCC, which states that the secured party shall send an explanation before or when it "first makes written demand on the consumer obligor after the disposition for payment of the deficiency[.]"  13 Pa.C.S. § 9616(b)(1)(i).  They also disregard the comment to Section 9616, which provides that a secured party who does not attempt to collect a deficiency has no obligation to send an explanation under Section 9616(b)(1) and, consequently, cannot be liable for noncompliance.  As such, Appellants would not have us construe the UCC and MVSFA together as one statute, but instead discount the specific, unambiguous language of the UCC to favor its broad interpretation of the MVSFA.  We decline to do so.  Second, we disagree with Appellants' contention that the MVSFA **unequivocally** required FCB to issue a deficiency notice regardless of whether they were attempting to collect the deficiency.  Instead, Section 6261(d) of the MVSFA seems to contemplate that the installment seller or holder is seeking to recover the deficiency, given that it instructs that the deficiency notice contain the amount of the deficiency owed by the buyer and the statute itself is entitled 'Deficiency judgment.'  Finally, as a practical matter, it makes little sense to require the installment seller or holder to send a deficiency notice where the buyer is not liable for a deficiency.

Finally, Appellants complain that the trial court "improperly accepted [FCB's] unverified allegation that it did not attempt to collect a deficiency, despite the absence of any support in the record for it." Appellants' Brief at 37 (citation omitted). In fact, Appellants claim that the pre-sale notice suggested that FCB may have attempted to collect a deficiency because it warned that "[i]f we receive less money than you owe, <u>you will still owe us the difference</u>." *Id.* (citations omitted; emphasis in original).

No relief is due on this basis. As FCB discerns, Appellants "made no allegation that [FCB] ever attempted to collect the deficiency from them." FCB's Brief at 59. Further, it says that, had it done so, Appellants "would have alleged this fact and they likewise likely would have sought to hold [FCB] in contempt for violating the [d]ischarge [o]rder." *Id.* (citing *In re McNeil*, 128 B.R. 603, 607 (Bankr. E.D.Pa. 1991) (attempting to collect debts discharged in bankruptcy exposes creditors to contempt and potential monetary sanctions)).[20] In addition, we have already concluded that the trial court was permitted to take judicial notice of Appellants' bankruptcy petition and the bankruptcy court's subsequent discharge order. *See* Issue 1, *supra*. Accordingly, Appellants are not entitled to relief on this claim.

### Issue 4

In Appellants' fourth issue, they advance that "[t]he UCC provides the remedy for [FCB's] violations of the MVSFA." Appellants' Brief at 38 (emphasis

---

[20] *See also* footnote 18, *supra* (setting forth the bankruptcy court's discharge order advising that creditors cannot collect discharged debts).

and unnecessary capitalization omitted).  They, again, say that "courts must read the UCC and MVSFA *in pari materia*, and the UCC provides the remedy for [FCB's] violations of the MVSFA."  *Id.*

No relief is due on this issue.  Even upon our attempt to read the UCC and the MVSFA *in pari materia* as Appellants urge us to do, we have uncovered no violations of the MVSFA that would warrant relief under the UCC.  Thus, we deem this claim meritless.

### Issue 5

In Appellants' fifth issue, they claim that they "have fully pleaded claims under the UCC for [FCB's] breach of contract, and its conversion of [Appellants'] property."  Appellants' Brief at 39 (emphasis and unnecessary capitalization omitted).  They contend that "those claims are grounded in the requirement of [S]ection 9610 [of the UCC] that '[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable.'"  *Id.* (quoting 13 Pa.C.S. § 9610).  As such, they argue that, "[a]s with UCC remedies for violations of the MVSFA, common law claims trigger violations of the commercial reasonableness requirement under the UCC."  *Id.* (citation omitted).

### *Breach of Contract*

To begin, with respect to their breach-of-contract claim, Appellants argue that they fully pleaded their claim relating to FCB's breach of the RISC.  ***See id.*** at 39.  In their complaint, they averred, in pertinent part, the following:

- 44 -

## COUNT IV
## Statutory Damages for Breach of Contract
## On Behalf of the Pre-Sale Notice Subclass Pursuant to 13 Pa.C.S.[] §§ 9610 and 9625

108. The preceding paragraphs are incorporated by reference.

109. The claims in this Count are asserted on behalf of the Pre-Sale Notice Subclass.

110. The Financing Agreements[, *i.e.*, the RISC,] between [FCB] and the members of the Pre-Sale Notice Subclass constitute binding agreements between [FCB] and members of the Breach of Contract Subclass.

111. Under the Financing Agreement, [FCB] had a duty to disclose the actual amount borrowers would need to pay to redeem their vehicles.

112. [FCB] breached its duty to disclose the actual amount borrowers would need to pay to redeem their vehicles, requiring instead that they make unauthorized payments to third parties, and that they take additional steps to request that actual amount from [FCB] and from such third parties.

113. Under the Financing Agreement, [FCB] had a duty to disclose whether borrowers could reinstate their loans and, for reinstatement-eligible borrowers, the amount such borrowers would be required to pay to reinstate their loans.

114. [FCB] breached its duty to disclose whether borrowers could reinstate their loans and, for reinstatement-eligible borrowers, the amount such borrowers would be required to pay to reinstate their loans.

115. Under the Financing Agreement, [FCB] had a duty to impose only expenses that [it] actually paid as a direct result of taking the vehicle, holding it, and/or preparing it for sale or selling it.

116. [FCB] breached its duty to impose only expenses that [it] actually paid as a direct result of taking the vehicle, holding it, and/or preparing it for sale or selling it.

117. Under the Financing Agreement, [FCB] had a duty to disclose whether its borrowers could reinstate their loans.

118. [FCB] breached its duty to disclose whether its borrowers could reinstate their loans.

119. Under the Financing Agreement, [FCB] had a duty to disclose the amount its borrowers were required to pay in order to cure and reinstate their loans.

120. [FCB] breached its duty to disclose the amount its borrowers were required to pay in order to cure and reinstate their loans.

121. As a direct and proximate result of [FCB's] foregoing breaches of its obligations under the Financing Agreement, the members of the Pre-Sale Notice Subclass did not receive the disclosures and information to which they were entitled under the Financing Agreements.

122. Consequently, the members of such Subclass did not receive information sufficient to enable them to determine whether they could or should exercise their rights of redemption, reinstatement, or to participate at any sale.

123. [FCB's] failure to meet its contractual obligations to [Appellants] in the context of a disposition sale was commercially unreasonable, *per se*, and [FCB] violated the requirement of the UCC that all aspects of the sale be commercially reasonable [pursuant to S]ection 9610(b).

124. Accordingly, [FCB] is liable to each member of such Subclass for statutory damages [in] an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price pursuant to UCC [S]ection 9625(c).

Complaint at ¶¶ 108-24.

Here, the trial court determined that Appellants did not plead the required elements to support a breach-of-contract claim, opining:

For a [p]laintiff to bring a sustainable breach of contract claim, [the plaintiff] must successfully plead three elements: (1) the existence of a contract between the parties; (2) the breach of the contract's terms; and (3) resultant damages. **Meyer, Darragh, Buckler v. Law Firm of Malone Middleman**, [137 A.3d 1247 (Pa. 2016)]. In this present case, there was a contract between these parties. However, there is no indication that [FCB] breached the contract's terms. [Appellants] do not cite a section of the

RISC that [FCB] did not comply with. [Appellants] have also failed to plead damages as a result. They ask for statutory damages as a remedy, which they would not be entitled to.

TCO at 17 (internal citation omitted).

We agree with the trial court that Appellants failed to establish that FCB breached the RISC. The RISC states, in relevant part:

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

\*\*\*

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:

- You do not pay any payment on time;

- You give false or misleading information on a credit application;

- You start a proceeding in bankruptcy or one is started against you or your property; or

- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

\*\*\*

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.

If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.

If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

Complaint at Exhibit 1 ("RISC") at ¶¶ 3(b), (d), (e), (f) (emphasis in original; unnumbered pages).

Appellants first allege that, under the RISC, FCB had a duty to disclose the actual amount borrowers would need to pay to redeem their vehicles, and breached that duty by requiring that Appellants make unauthorized payments

to third parties (*i.e.*, Altoona Auto Auction) and take additional steps to request the actual amount to redeem from FCB and from such third parties. *Id.* at ¶¶ 111-12. This allegation is belied by the RISC and the pre-sale notice Appellants attached to their complaint.

As set forth *supra*, the RISC states that FCB "will tell you how much to pay to redeem." *See* RISC at ¶ 3(e).[21] After repossessing Appellants' vehicle, FCB sent its pre-sale notice to Appellants, which included an itemized statement of the amount Appellants were required to pay to FCB to redeem the vehicle as of that date, advised that Appellants must also pay a storage fee of $25/day and other costs charged by Altoona Auto Auction, and provided a phone number for Appellants to call "[t]o learn the exact amount you must pay[.]" *See* Pre-Sale Notice at 1 (single, unnumbered page). Based on the foregoing, FCB's duty under the RISC was to tell Appellants how much to pay to redeem, and it followed through on that duty by giving them the relevant information, including how to inquire further about the exact amount they would owe if they sought to redeem the vehicle. We note that Appellants do not allege that they attempted to call the phone number provided to inquire about the exact amount due. Thus, the record does not support that FCB failed to tell Appellants how much to pay to redeem, and we therefore reject Appellants' legal conclusion that FCB breached the contract in this way. *See*

_____

[21] Notably, the RISC does not specifically promise that FCB would send Appellants a letter with the precise amount that Appellant must pay in order to redeem. It also does not say that all payments Appellants would have to make to redeem the vehicle would be to FCB.

*Joyce v. Erie Ins. Exchange*, 74 A.3d 157, 168 (Pa. Super. 2013) (explaining that "[w]hile we accept [the a]ppellant's averments of fact as true for purposes of reviewing preliminary objections, [c]onclusions of law … are not admitted by a demurrer[,]" and "[w]hether [the appellee] breached a duty imposed by contract is a legal conclusion") (cleaned up).

Second, Appellants averred that, pursuant to the RISC, FCB had a "duty to disclose whether borrowers could reinstate their loans and, for reinstatement-eligible borrowers, the amount such borrowers would be required to pay to reinstate their loans." Complaint at ¶ 113; *see also id.* at ¶¶ 117, 119. Appellants alleged in their complaint that FCB breached this duty. *Id.* at ¶¶ 114, 118, 120. Again, we disagree.

The RISC sets forth that "[i]f we repossess the vehicle, we may, *at our option*, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). *We will tell you if you may reinstate and how much to pay if you may*." RISC at ¶ 3(e) (emphasis added). Based on the language of the RISC, we do not agree with Appellants that FCB had to disclose, either way, whether borrowers could reinstate their loans; instead, the RISC promised that FCB would tell borrowers *if they may reinstate*. In other words, if FCB opted to not allow reinstatement, it had no duty to disclose that. Appellants do not allege that FCB allowed them to reinstate their loan but failed to advise them of that option. Further, because Appellants do not allege that FCB allowed them to reinstate their loan, FCB also had no duty to

disclose the amount they had to pay to reinstate. Thus, the RISC, the pre-sale notice, and the facts alleged do not support Appellants' conclusion of law that FCB breached the RISC on this basis. ***See Joyce***, ***supra***.

Third, Appellants claim that, under the RISC, FCB had a duty to impose only expenses that it actually paid as a direct result of taking the vehicle, holding it, and/or preparing it for sale or selling it. Complaint at ¶ 115. Based on our review of the complaint, it appears that Appellants aver that FCB breached this duty by requiring Appellants to pay storage costs and other charges directly to Altoona Auto Auction in violation of the RISC. ***Id.*** at ¶¶ 5-6, 116. Further, Appellants alleged that FCB "is not required to pay storage fees to third parties for borrowers' vehicles, nor is [it] required to pay the undisclosed 'other charges,' which [FCB] improperly requires its borrowers to pay to third parties, without any basis under the law or the [RISC]." ***Id.*** at ¶ 7; ***see also id.*** at ¶ 116.

Again, we determine that the RISC and the pre-sale notice do not support this breach-of-contract claim. The RISC generally provides that "[i]f you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale." RISC at ¶ 3(e). It also states that, "[i]f any personal items are in the vehicle, we may store them for you at your expense." ***Id.*** at ¶ 3(d). The record establishes that Appellants were in default for more than 15 days when FCB obtained the vehicle. ***See id.*** at ¶ 3(b) (stating that default means, *inter alia*, starting a proceeding in

bankruptcy); Bankruptcy Petition (showing that Appellants filed for bankruptcy on November 13, 2017); Complaint at ¶ 29 (alleging that FCB repossessed the vehicle in October of 2018). Therefore, pursuant to the RISC, the amount Appellants must pay to redeem would include the expenses of taking the vehicle, holding it, and preparing it for sale. Moreover, Appellants point us to nothing in the RISC that says those expenses must be paid directly to FCB, and our own review uncovers no such requirement.[22] Therefore, FCB did not breach the RISC by stating in the pre-sale notice that "[i]n addition to paying us the Total Amount Due, you must also pay storage fees of $25 per day and other costs charged by Altoona Auto Auction. These charges must be paid to Altoona Auto Auction at the time when you redeem your vehicle." Pre-sale Notice at 1 (single, unnumbered page). As such, we conclude that the RISC and the pre-sale notice likewise do not support that FCB breached the RISC in this manner. **See Joyce**, **supra**. Thus, all of Appellants' breach-of-contract claims fail.

*Conversion*

_____

[22] We note that the RISC states that "[w]e will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses." RISC at ¶ 3(f). We read this provision as permitting FCB to deduct certain expenses it paid from the amount of money received for the vehicle at the sale. We do not read it as prohibiting FCB from having Appellants pay storage costs and other charges directly to a third party, instead of to FCB.

Regarding their conversion claim, Appellants similarly argue that they "have fully pleaded all of the elements of [FCB's] unlawful conversion." Appellants' Brief at 40 (citations omitted).  In their complaint, they alleged, in relevant part, the following:

### COUNT V

### Statutory Damages for Conversion
### On Behalf of the Pre-Sale Notice Subclass Pursuant to 13 Pa.C.S.[] §§ 9610 and 9625

125. The preceding paragraphs are incorporated by reference.

126. The claims in this Count are asserted on behalf of the Pre-Sale Notice Subclass.

127. [FCB] interfered with the lawful use and possession of the vehicles of the members of the Pre-Sale Notice Subclass by unlawfully causing them to be sold without first complying with their obligations under the law.

128. [FCB] disposed of the vehicles of members of the Pre-Sale Notice Subclass without their consent.

129. Because the [pre-]sale notices that [FCB] issued to the members of the Pre-Sale Notice Subclass were defective under the UCC, the MVSFA and/or the Financing Agreements[, *i.e.*, the RISC], [FCB] lacked lawful justification to dispose of the vehicles of members of the Pre-Sale Notice Subclass.

130. [FCB's] unlawful conversion of [Appellants'] vehicle[] in the context of a disposition sale was commercially unreasonable, *per se*, and [FCB] violated the requirement of the UCC that all aspects of the sale be commercially reasonable [under S]ection 9610(b).

131. Accordingly, [FCB] is liable to each member of such Subclass for statutory damages [in] an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price pursuant to UCC [S]ection 9625(c).

Complaint at ¶¶ 125-31.

In considering FCB's preliminary objections to Appellants' conversion claim, the trial court opined:

> Conversion is a tort by which the defendant deprives the plaintiff of his right to personal property or interferes with the plaintiff's use or possession of personal property without the plaintiff's consent and without lawful justification. ***Stevenson v. Economy Bank of Ambridge***, 197 A.2d 721, 726 (Pa. 1964). [Appellants] do not allege that they made the required monthly payments on their [v]ehicle. As a result of [Appellants'] default, [FCB] had the right to repossess the [v]ehicle. [Appellants] also willingly *surrendered* the [v]ehicle to [FCB].[23] Therefore, [FCB] had the lawful right to repossess the vehicle and [Appellants'] conversion claim would not be successful.

TCO at 17 (emphasis in original).

Appellants do not convince us that the trial court erred. They claim that "[b]ecause the [pre-]sale notices that [FCB] issued to the members of the Pre-Sale Notice Subclass were defective under the UCC, the MVSFA and/or the Financing Agreements[, *i.e.*, the RISC], [FCB] lacked lawful justification to dispose of the vehicles of members of the Pre-Sale Notice Subclass." Complaint at ¶ 129; ***see also*** Appellants' Reply Brief at 12 (arguing that FCB's "failure to comply with the provisions of the UCC and MVSFA left it without any lawful justification to sell the [v]ehicle — since disposition sales can only be conducted in compliance with the law. Plainly, the unlawful sale described in [Appellants'] UCC claim describing the common law claim of conversion exposed [FCB] to statutory damages under the UCC"). However, we have already determined that FCB's pre-sale notice was sufficient under the UCC,

---

[23] Because Appellants did not plead that they surrendered the vehicle in their complaint, we disregard this statement by the trial court. ***See*** Issue 1, ***supra***.

the MVSFA, and the RISC. Thus, we reject Appellants' legal conclusion that FCB lacked lawful justification to dispose of the vehicle. *See Joyce*, *supra*. No relief is due on this basis.

**Issue 6**

In Appellants' sixth issue, they argue that "the gist of action doctrine does not preclude any of [their] causes of action." Appellants' Brief at 41 (emphasis and unnecessary capitalization omitted).[24] Below, the trial court determined that, "[b]ecause [Appellants'] conversion claim is based on [FCB's] alleged default of the [RISC], Pennsylvania's [g]ist of the [a]ction [d]octrine precludes recovery." TCO at 19. Appellants claim that the trial court erred on this basis, as FCB's "duty to abstain from unlawful interference

---

[24] This Court has explained:

> The question of whether the gist of the action doctrine applies is an issue of law subject to plenary review.

> A claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

> … Courts have held that the doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*J.J. DeLuca Co., Inc. v. Toll Naval Associates*, 56 A.3d 402, 413 (Pa. Super. 2012) (cleaned up).

with [Appellants'] property interests does not stem from any contract[,]" and they assert that "the gist of the action doctrine can have no application when all of [Appellants'] claims are for statutory damages under the UCC." Appellants' Brief at 41 (citation omitted); Appellants' Reply Brief at 11.

Because we have already concluded that Appellants failed to establish FCB's conversion of their vehicle, *see* Issue 5, *supra*, we need not address whether that claim is barred by the gist of the action doctrine. Accordingly, we do not delve into Appellants' sixth issue further.

**Issue 7**

In Appellants' seventh and final issue, they argue that "the trial court erred by dismissing [their] complaint without permitting them an opportunity to amend." Appellants' Brief at 43 (emphasis and capitalization omitted). They say that, "[e]ven if dismissal of this case had been justifiable under the law…[, Appellants] should nevertheless had [*sic*] been permitted to amend their pleading to cure any alleged defect." *Id.*

Appellants have waived this issue by not seeking leave to amend their complaint with the trial court. As FCB aptly explains,

> [t]he only time a plaintiff has an automatic right to amend a complaint is within twenty days of the filing of the defendant's preliminary objections. Pa.R.C[iv].P. 1028(c)(1). In all instances not covered by Rule 1028(c)(1), a plaintiff must obtain either the defendant's consent or leave of court. Pa.R.C[iv].P. 1033. And under those circumstances, the decision whether to grant leave to amend a pleading is within the trial court's sound discretion. *Schwarzwaelder*[ *v. Fox*,] 895 A.2d [614, 621 (Pa. Super. 2006)]. A court abuses its discretion if it misapplies the law or exercises its judgment in a way that is "manifestly unreasonable,

or the result of partiality, prejudice, bias or ill-will." ***Pader v. Baker Concrete Constr., Inc.***, 658 A.2d 341, 343 (Pa. 1995).

Our Supreme Court has already specifically held that a plaintiff waives any request to amend the complaint by failing to raise it before the trial court. ***See Werner v. Zazyczny***, 681 A.2d 1331, 133[8] (Pa. 1996). In addressing the claim of trial court error for failing to grant leave to amend after it sustained the defendant's preliminary objections, the Pennsylvania Supreme Court in ***Werner*** held:

> Here, [the] petitioner's claim fails because he never requested that the Commonwealth Court allow him leave to amend. [The petitioner] fails to cite to any case law, and we can find none, requiring a court to *sua sponte* order or require a party to amend his pleading.

***Id. See also Spain v. Vicente***, 461 A.2d 833, 837 (Pa. Super. 1983) (trial court did not err in refusing to permit [the] plaintiff to amend [the] complaint, in part, because [the] plaintiff had not filed [a] formal motion for leave to amend).

As in ***Werner***, [Appellants] did not request leave to amend their [c]omplaint, nor do they claim (or cite to any authority to support the proposition) that the trial court had an obligation to *sua sponte* allow amendment. Therefore, no relief is due.

FCB's Brief at 71-73.

We agree with FCB's analysis.[25]  As Appellants did not ask the trial court to allow them to amend their complaint, they have waived this claim.[26]

In sum, none of Appellants' seven issues warrant relief.  Accordingly, we affirm the trial court's order sustaining FCB's preliminary objections and dismissing Appellants' complaint with prejudice.

Order affirmed.

_____

[25] We also point out that Appellants do not specify in their brief how they wish to amend their complaint, so as to establish that the amendment would not be futile.  **See Stempler v. Frankford Ford Trust Co.**, 529 A.2d 521, 524-25 (Pa. Super. 1987) ("Even at this late stage in the proceedings the appellant has given no indication of facts on which a cause of action could be based. The grant of a demurrer would obviously be meaningless if the concept of amendment to a pleading were extended to permit one who has articulated no basis for a cause of action, to continue searching until one may be located. The liberality in allowing amendments must not be construed to permit amendments at any time where ample opportunity is given to amend a pleading and a party refuses to do so but persists in its claim that a cause of action has been set forth.  In these circumstances once a court has properly determined that a cause of action does not exist, there is no abuse of discretion in denying an amendment where the facts already established indicate that the amendment would be futile.").

[26] In their reply brief, Appellants argue that they preserved this issue for appeal in their Rule 1925(b) concise statement, and claim that they could not have sought leave to amend earlier because the trial court did not provide a legal explanation for sustaining FCB's preliminary objections until it filed its Rule 1925(a) opinion.  Appellants' Reply Brief at 13.  We are unpersuaded by this argument.  Initially, after FCB filed its preliminary objections, Appellants could have asked the trial court to grant them leave to amend their complaint in the event the trial court sustained the preliminary objections.  Additionally, Appellants do not explain why they could not have sought leave to amend their complaint — and request that the trial court clarify its order — in the period of time between the trial court's sustaining FCB's preliminary objections and Appellants' filing their notice of appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/8/2022