J-S31043-25          2026 PA Super 7

| | | |
|---|---|---|
| IDRIS ABDUS SABER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAVY FEDERAL CREDIT UNION | : | No. 2449 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230900635

BEFORE: PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

OPINION BY NICHOLS, J.:                    **FILED JANUARY 14, 2026**

Appellant Idris Abdus Saber appeals from the order denying his motion for title of vehicle against Appellee Navy Federal Credit Union. Appellant claims that he is the holder in due course of a promissory note for a vehicle loan with a corresponding right to title to the vehicle prior to repayment of the loan. We affirm.

The trial court summarized the facts and procedural history of this appeal as follows:

On or about April 26, 2023, Appellant [] applied for and was pre-approved for a loan in the amount of $42,399.00 by [Appellee] to purchase a vehicle. The pre-approval letter, promissory note, security agreement, and disclosure included salient terms and conditions of the loan, including the required methods of repayment by [Appellant] as the borrower, as well as [Appellee's] approval condition in the form of a security interest and/or lien on the purchased vehicle as collateral.

Following execution of all loan documents and the loan draft which reiterated the security lien condition, [Appellant] successfully purchased and took physical possession of [a] 2020 Jeep Grand

Cherokee [(Vehicle)] on or about May 1[9], 2023, from Reedman Toll Chrysler Dodge Jeep Ram of Jenkintown [(dealership)]. [Vehicle] was purchased with the loan funds that had been conditionally supplied to [Appellant] by [Appellee]. [Appellee] paid $30,454.40 [directly] to [the] dealership and the total amount financed was $42,375.76. [Appellee] duly supplied its lien and title information report [on Vehicle] to the Commonwealth of Pennsylvania Department of Transportation [(PA DOT)] on or about May 19, 202[3].

The resulting loan draft which had been issued by [Appellee] and executed by both parties expressly identified [Appellee's] security interest and/or lien in [Vehicle]. . . . [T]he promissory note required [Appellant] to make payments towards his loan balance. On or about June 19, 2023, . . . approximately seven [] weeks after [Appellant] had purchased [Vehicle], [Appellee] received a letter from [Appellant] claiming that his debt was invalid.

[Appellee] responded to [Appellant's] correspondence in writing informing [Appellant] that his debt was valid and that any failure to make payments could result in negative credit action and breach of the loan agreement. Shortly thereafter, [Appellant] requested verification of his debt, which he received from [Appellee], including consumer loan bills and a copy of the promissory note and all paperwork related to his purchase of [Vehicle].

On or about September 8, 2023, [Appellant] commenced the instant civil action by [filing] a motion for title of vehicle . . . averring that [Appellant] is the "last endorser" of the promissory note and is, therefore, entitled to the full unencumbered title [to Vehicle] issued by [PA DOT].

On September 26, 2023, [Appellee] filed an answer[,] arguing in pertinent part, that [Appellant] applied for and received a loan from [Appellee] to purchase [Vehicle]; that [Appellee] has a valid security interest and has asserted a lien on [Vehicle] as collateral; that the lien is valid and legally enforceable, and that [Appellant] still owes a balance on his loan to [Appellee]. [Appellee] further responded that when [Appellant] pays off his vehicle loan, he will be eligible to receive the title to [Vehicle].

Upon consideration of all submitted evidence and pleadings, [the trial] court entered an order on October 2, 2023, which was []

docketed on October 3, 2023, denying Appellant['s motion].[1]  On November 1, 202[3], Appellant filed a notice of appeal . . . docketed under 2841 EDA 2023[,] challenging th[e] October [3], 2023 order.  Per order dated November 3, 2023, [the trial court] directed Appellant to file a concise statement of matters complained of on appeal by November 24, 2023.  Appellant failed to file any statement.  On January 18, 2024, [the trial] court submitted a 1925(a) opinion seeking dismissal of [Appellant's] appeal because all issues had been waived due to Appellant's failure to timely time a statement of matters complained of on appeal.

On January 26, 2024, Appellant filed a motion to file *nunc pro tunc* arguing that he never received [the trial] court's November 3, 202[3] order directing him to file a statement of errors[.]  Subsequent review of the civil docket [by the trial court] reflected no docketing of [the trial] court's order directing the statement filing that had been filed and sent to the parties.  Appellee [] had no opposition to [] Appellant's motion to file post-trial motions *nunc pro tunc*.  On April 29, 2024, [this Court] quashed Appellant's appeal, docketed under 2841 EDA 2023, granting Appellant ten days to file post-trial motions pursuant to ***Jenkins v. Robertson***, 227 A.3d 1196 (Pa. Super. 2022).[2]  [On May 9, 2024, Appellant filed a motion for post-trial relief.]

To provide [Appellant] a full opportunity to revisit the merits of his motions, [the trial court] directed that a rule hearing be scheduled . . . for August 12, 2024[.]

_____

[1] We note that on September 11, 2023, the trial court issued a rule to show cause order wherein it directed the parties to appear before it on October 2, 2023 "prepared to present evidence and/or testimony as to the issues raised in the petition and any response thereto."  Trial Ct. Order, 9/11/23 (Rule Returnable).  On the same date, September 11, 2023, the trial court also scheduled a "motion hearing" for October 2, 2023.  Trial Ct. Docket at 4.

[2] On April 29, 2024, under the impression that the trial could had held "the equivalent of a trial," this Court entered an order quashing Appellant's prior appeal on the basis that the trial court had not provided Appellant with his post-trial motion rights pursuant to Pa.R.Civ.P. 227.1(c) and granted Appellant ten days "to file any post-trial motions with the trial court."  ***Saber v. Navy Federal Credit Union***, 2841 EDA 2023, Order, 4/29/24.

Trial Ct. Op., 3/3/25, at 1-4 (some formatting altered and some citations omitted).

At the August 12, 2024 hearing, Appellant argued that he had a right to title of Vehicle because his "borrower's signature on the borrower's line" of the promissory note was an "endorsement signed by the endorser . . . which transfers liability of the security instrument to the new payee[,]" or, in other words, that "an endorsement . . . removes the endorser from liability." N.T., 8/12/24, at 8, 13. Appellant attached a copy of the promissory note to his post-trial motion. **See** Appellant's Post-Trial Mot., 5/9/24, Ex. D (copy of promissory note). The promissory note is dated May 19, 2023 and states the terms of the loan, including the amount borrowed, the interest rate and repayment schedule, and identifies Vehicle as the security interest on the loan. **Id.** Appellant signed the note both on the signature lines for "Borrower" and for "Owner of Collateral (Other than Borrower)." **Id.** Below the signature lines Appellant's signature appears a third time, within what appears to be an ink stamp stating "WITHOUT RECOURSE PAY TO THE ORDER OF IDRIS ABDUS SABER." **Id.**

Appellee responded that Appellant is not an endorser with regard to the loan but rather "the original maker" of the promissory note. N.T., 8/12/24, at 11-12. Appellee also argued that "[Appellant's] stamping 'without recourse' on the promissory note has literally no legal effect." **Id.** at 12. Appellee concluded by noting that Appellant "has taken out a loan that he hasn't repaid[]" and, therefore, "[h]e is not entitled to the title of the vehicle[.]" **Id.**

- 4 -

at 13. After hearing these arguments, the trial court concluded that Appellant "can't get the title of [Vehicle] as long as there's a lien on it. When you pay the loan back, you can get the title of [Vehicle]." *Id.* On August 13, 2024, the trial court dismissed as moot Appellant's motion to file [a Rule 1925(b) statement] *nunc pro tunc* and denied Appellant's motion for post-trial relief. *See* Trial Ct. Orders, 8/13/24.

Appellant filed a timely notice of appeal and both Appellant and the trial court timely complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following claims:

1. Whether the trial court misapplied [Pennsylvania Uniform Commercial Code (PUCC)] principles and the law by rejecting the legal effect of a signed special indorsement appearing on the original promissory note and thus erred regarding title or possession of the vehicle despite uncontroverted evidence of an indorsement transferring said note "without recourse" to Appellant, as a Holder in Due Course under 13 Pa.C.S. § 3302.

2. Whether the trial court committed reversible error by failing to recognize Appellant's status as a Holder in Due Course under 13 Pa.C.S. §§[] 3104(d), 3301, and 3302, and thus the trial court's judgment conflicts with established precedent, including ***D'Happart v. First Commonwealth Bank***, 110 A.3d 167 (Pa. Super. 2015) and 291 A.3d 1026 (Pa. Super. 2023) which confirms that a Holder in Due Course is entitled to enforce a negotiable instrument free from competing claims.

Appellant's Brief at 7-8.

Preliminarily, we address whether Appellant has waived his claims. "[W]here an appellant fails to properly raise or develop his issues on appeal, or where his brief is wholly inadequate to present specific issues for review, [this Court] will not consider the merits of the claims raised on appeal." ***Lynch***

- 5 -

**v. Zwecharowski**, 1041 EDA 2021, 2022 WL 1836263, at \*3 (Pa. Super. 2022) (unpublished mem.)[3] (citation omitted); **see also Butler v. Illes**, 747 A.2d 943, 945 (Pa. Super. 2000) (finding waiver where the appellant "failed to cogently explain . . . why the trial court abused its discretion or made an error of law"). "Appellate arguments which fail to adhere to the[] rules [of appellate procedure] may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted); **see also** Pa.R.A.P. 2119(a)-(c).

Here, in his first issue on appeal and in his argument, Appellant cites to "**D'Happart v. First Commonwealth Bank**, 110 A.3d 167 (Pa. Super. 2015) and 291 A.3d 1026 (Pa. Super. 2023)." Appellant's Brief at 8, 12. No such case exists at either of these citations and the single authority with the same caption does not support Appellant's contention. **Cf. d'Happart v. First Commonwealth Bank**, 282 A.3d 704 (Pa. Super. 2022). Appellant proffers voluminous argument about the rights of a holder in due course under the PUCC but, absent the purported authority in the non-existent **D'Happart**

---

[3] We may cite to non-published decisions of this Court filed after May 1, 2019 for their persuasive value pursuant to Pa.R.A.P. 126(b).

cases, fails to state an argument that he has the rights of a holder in due

course as enumerated in the PUCC. Appellant's Brief at 11-22.[4]

_____

[4] In addition to Appellant's nonsensical citations to and characterization of the ***D'Happart*** cases, Appellant's brief fails to relate the PUCC provisions cited to relevant portions of the record. By way of illustration, Appellant argues:

> To qualify as a Holder in Due Course, the PUCC requires only that the party a) take the instrument **for value**, b) in **good faith**, and c) **without notice** of any claim or defense at the time of negotiation. ***See*** 13 Pa.C.S. § 3302(a).

> The record demonstrates all of these elements. Appellant testified to having taken the instrument in a bona fide transaction, gave value, and was not aware of any competing claims or defenses at the time of acquisition.

Appellant's Brief at 12 (emphasis in original). Here, among other things, Appellant's contention that he "gave value" is wholly unmoored from the record. Further, as Appellee points out, in addition to the ***D'Happart*** citations, Appellant's brief contains citations to several other cases which "do not exist" and suggests this is due to Appellant's use of generative artificial intelligence ("generative AI" or "GAI") to draft his brief. Appellee's Brief at 17-18.

The Colorado Court of Appeals has explained that "[c]ase names and citations that a GAI tool makes up are known as 'hallucinations.'" ***Al-Hamim v. Star Hearthstone, LLC***, 564 P.3d 1117, 1119 (Colo. App. 2024) (citations omitted); ***see also Sanders v. United States***, 176 Fed.Cl. 163, 169 (Fed. Cl. 2025) (stating that "[i]t is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs" (citation omitted)). The ***Al-Hamim*** Court further stated that "GAI tools are trained using [large language models] that, through a form of machine learning known as deep learning, teach the program how characters, words, and sentences function together." ***Al-Hamim***, 564 P.3d at 1123 (citations and quotation marks omitted). Further, "[a] GAI system can generate citations to totally fabricated court decisions bearing seemingly real party names, with seemingly real reporter, volume, and page references, and seemingly real dates of decision." ***Id.*** (citations and quotation marks omitted); ***see also Commonwealth v. Shie***, 2971 EDA
*(Footnote Continued Next Page)*

While Appellant's brief also includes citations to actual authority, such as provisions of the PUCC, he fails to "reference the place in the record where the matter referred to appears[,]" that is, to relate the cited authority to the "questions to be argued[.]" Pa.R.A.P. 2119(a), (c). Appellant also fails to discuss how these PUCC provisions apply to the facts, as required by Rule 2119(a). **See** Pa.R.A.P. 2119(a) (requiring argument to include "discussion and citation of authorities as are deemed pertinent").

Because Appellant has failed to develop cognizable arguments with discussion and citation to relevant authority or where in the record the matter appears, we conclude that he has waived his claims on appeal. **See Lynch**, 2022 WL 1836263, at *3; **see also Butler**, 747 A.2d at 945; **Lackner**, 892 A.2d at 29-30; **see also** Pa.R.A.P. 2119(a),(c). Accordingly, we affirm the order below.

Order affirmed. Jurisdiction relinquished.

---

2022, 2023 WL 6878610, at *7 n.7 (Pa. Super. filed Oct. 18, 2023) (unpublished mem.) (noting that "not a single one of [the] citations [in the brief] is legitimate. This Court is left to guess whether this counterfeit authority is the product of [GAI], or if there is a more nefarious explanation for the misinformation").

Litigants must cite to authority that is "pertinent" to the issues on appeal. **See** Pa.R.A.P. 2119(a). The use of GAI to draft legal filings (including by *pro se* litigants), without verification of the accuracy of the content so produced, may lead to misstatements and/or misrepresentations of legal authority. Such GAI-generated misstatements and/or misrepresentations are not 'pertinent' authority. Additionally, such misstatements and/or misrepresentations, if further disseminated, would undermine the sense of accuracy and reliability of the law they purport to reference.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/14/2026